

# IN THE
# TENTH COURT OF APPEALS

No. 10-07-00094-CV

VAN LEE BREWER,

Appellant

 v.

JASON A. SIMENTAL, GORDON TOWNSEND,
CARL DAVIS, DAVID DUKE, JANET C. TAYLOR,
LINDSAY LEWIS, ROBERT LOSACK,
AND JOHN D. SEIGLE,

Appellees

From the 278th District Court
Walker County, Texas
Trial Court No. 23325

## OPINION

Van Brewer, a prison inmate at the Wynne Unit in Huntsville, is appealing the trial court's dismissal order of his section 1983 civil-rights suit against eight Texas Department of Criminal Justice—Institutional Division employees: Jason A. Simental, Gordon Townsend, Carl Davis, David Duke, Janet C. Taylor, Lindsay Lewis, Robert Losack, and John D. Seigle. We will reverse and remand.

## Factual Background

Brewer's claims center around the alleged misconduct of Simental, a correctional lieutenant in the Wynne Unit's Administrative Segregation (Ad. Seg.) unit at the time. According to Brewer's petition, in October of 2005, Brewer was involved pro se in civil litigation pending before the Texas Supreme Court with a pending October 14 deadline that necessitated access to the prison's law library. Brewer was assigned work hours of 1:00 to 9:00 p.m. on a utility squad, so he was requesting and being granted law library official passes (internally called "lay-ins") from 5:50 a.m. to 7:55 a.m. and 9:00 a.m. to 11:00 a.m. The law library staff could not issue lay-ins for times when an inmate was scheduled to be working, and the staff checked Brewer's assigned work hours on a computer before issuing his lay-ins.

The gist of Brewer's claim is that Simental unilaterally and without authority (including no official work duty reassignment) assigned Brewer to work utility in Ad. Seg. at 5:00 a.m. to keep Brewer out of the law library. When Brewer did not report because he had a law library lay-in (and also because he had been removed from working in Ad. Seg. because of an altercation with an Ad. Seg. inmate in 2002), Simental, individually and at times with corrections sergeant Gordon Townsend and corrections officers Carl Davis or David Duke, removed Brewer numerous times from the law library and assigned him to his cell for not reporting to work in Ad. Seg. at 5:00 a.m. In response, Brewer filed grievances against them for not allowing him law library access and violating TDCJ's Access-to-Court Policy. Simental, Davis, and Duke retaliated by filing several disciplinary charges against Brewer, and Brewer filed more

grievances for their filing false disciplinary charges.

Brewer alleges that Janet C. Taylor (an administrative assistant), Lindsay Lewis (a grievance investigator), Robert Losack (corrections captain and disciplinary hearing officer), and John D. Seigle (corrections sergeant and law library supervisor) conspired in one way or another with Simental. With Taylor, Simental had Brewer's work assignment changed *ex post facto* on the computer to validate Simental's actions. With Seigle, Simental had Brewer's law library access taken away. With Lewis and Losack, Simental had Brewer's Ad. Seg. restriction removed, had Brewer's grievances denied, and had Brewer disciplined. Brewer was disciplined with several thirty-days' commissary restrictions, thirty-days' cell restrictions, loss of contact visitation, a forty-five days' property restriction, and line class reductions.

## Procedural Background

With the filing of his section 1983 lawsuit on January 24, 2006, Brewer included his affidavit of indigence with trust fund statement, affidavit relating to previous filings, affidavit of grievances, and first supplemental affidavit of grievances. The next day, the clerk issued a bill of costs totaling $1,021.00 for the filing, citation, and service fees, and the trial court ordered the clerk to assess them against Brewer in accordance with Government Code section 498.0045 and Civil Practice and Remedies Code section 14.006. The trial court also ordered payments of those costs from Brewer's inmate trust account in accordance with section 14.006(b). Finally, the trial court ordered the clerk to send a copy of all of Brewer's filings to the Attorney General's office for a review and a response on Brewer's compliance with Chapter 14 of the Civil Practice and Remedies

Code and for obtaining authority to represent and to answer on behalf of the defendants.  Brewer filed a second supplemental affidavit of grievances on February 9.

The defendants filed a motion to dismiss under Chapter 14, asserting:  (1) Brewer failed to comply with section 14.005 and Government Code section 551.008 relating to the exhaustion and filing of administrative grievances; and (2) Brewer's claims are frivolous or malicious.  The trial court found that Brewer's petition was frivolous and did not comply with Chapter 14 and dismissed the suit with prejudice.  Raising three issues, Brewer appeals.

**Application of Section 14.002**

A prison inmate who files suit in a Texas state court pro se and who seeks to proceed *in forma pauperis* must comply with the procedural requirements set forth in Chapter 14 of the Civil Practice and Remedies Code.  TEX. CIV. PRAC. & REM. CODE ANN. §§ 14.002(a), 14.004, 14.005 (Vernon 2002).  Failure to fulfill those procedural requirements will result in dismissal of an inmate's suit.  *See Bell v. Texas Dep't of Crim. Justice-Inst. Div.,* 962 S.W.2d 156, 158 (Tex. App.—Houston [14th Dist.] 1998, pet. denied).

Brewer's first issue complains about the facial unconstitutionality of Chapter 14. He asserts that, despite his invocation of Chapter 14 by his filing an affidavit of indigence, once the trial court assessed costs and ordered their payment out of his inmate trust account, the continued application of Chapter 14 violates equal protection and is thus unconstitutional because his suit is treated differently than the suit of a non-indigent inmate who paid costs of suit in advance and thus would not be governed by

Chapter 14).

Constitutional violations must be raised in the trial court to be preserved for appellate review. *In re S.A.P.,* 169 S.W.3d 685, 692 (Tex. App.—Waco 2005, no pet.) (citing *In re L.M.I.,* 119 S.W.3d 707, 710-11 (Tex. 2003)). Because Brewer did not raise his equal protection argument in the trial court, he has not preserved his first issue for appellate review. TEX. R. APP. P. 33.1(a).

### Chapter 14 Dismissal

Generally, the dismissal of inmate litigation under Chapter 14 is reviewed for abuse of discretion. *Hickson v. Moya*, 926 S.W.2d 397, 398 (Tex. App.—Waco 1996, no writ). "To establish an abuse of discretion, an appellant must show the trial court's actions were arbitrary or unreasonable in light of all the circumstances. The standard is clarified by asking whether the trial court acted without reference to any guiding rules or principles." *Spurlock v. Schroedter,* 88 S.W.3d 733, 735-36 (Tex. App.—Corpus Christi 2002, no pet.) (internal citations omitted).

### *Affidavits Relating to the Grievance System*

Section 14.005(a) mandates that an inmate who files a claim that is subject to the TDCJ grievance system file an affidavit or unsworn declaration stating the date that his grievance was filed and the date that he received the written grievance decision. TEX. CIV. PRAC. & REM. CODE ANN. § 14.005(a)(1). The section also mandates the filing of a copy of the written grievance decision. *Id.* § 14.005(a)(2). If an inmate does not strictly comply with section 14.005(a), a trial court does not abuse its discretion in dismissing the claim. *Draughon v. Cockrell,* 112 S.W.3d 775, 776 (Tex. App.—Beaumont 2003, no

pet.). Brewer's second issue complains that the trial court abused its discretion for dismissing his suit because of noncompliance with section 14.005(a).

Brewer filed an original affidavit of grievances and a supplemental affidavit of grievances with his original petition, and Brewer filed a second supplemental affidavit of grievances two weeks later. In their motion to dismiss, the defendants asserted: (1) Brewer's attached grievances refer to retaliation claims against only Simental and Townsend; (2) a copy of the grievance against Simental and Townsend was not included; and (3) Brewer did not grieve against Seigle. For these reasons, the defendants contended that Brewer did not comply with section 14.005 and Brewer did not exhaust his administrative remedies.

Brewer filed six detailed grievances pertaining to his claims in this case, as shown by Brewer's original affidavit of grievances and his two supplemental affidavits of grievances. The two supplemental affidavits were necessitated by the prison's need for extensions to investigate two of the grievances (including Brewer's second (October 19) grievance against Simental and Townsend) and to replace the prison's notices of extension with the grievances upon Brewer's receipt. On appeal, defendants in effect concede that Brewer technically complied with section 14.005(a), and the record reflects such compliance. Therefore, to the extent the trial court dismissed Brewer's suit for failure to comply with section 14.005, we find no grounds upon which the trial court could have found a failure to comply, and we conclude that the trial court abused its discretion. *See Spurlock,* 88 S.W.3d at 733.

The other aspect of the defendants' contention goes to the substance of Brewer's

grievances and the persons whom Brewer was grieving against.[1]  A remedy provided by the statutory prison inmate grievance system is the exclusive administrative remedy available to an inmate for a claim for relief against the department.  TEX. GOV'T CODE ANN. § 501.008(a) (Vernon 2004).  "An inmate may not file *a claim in state court regarding operative facts* for which the grievance system provides the exclusive administrative remedy until: (1) the inmate receives a written decision issued by the highest authority provided for in the grievance system; . . ."  *Id.* § 501.008(d)(1) (emphasis added).

The purpose of sections 14.005 and 501.008 is to allow the trial court to ensure that an inmate proceeding *in forma pauperis* has first used TDCJ's grievance procedure and has exhausted his administrative remedies through the prison grievance system before filing suit on the same operative facts.  *See Spurlock,* 88 S.W.3d at 737; *Smith v. Texas Dep't of Crim. Justice-Inst. Div.,* 33 S.W.3d 338, 341 (Tex. App.—Texarkana 2000, pet. denied).  Other than reviewing a grievance to insure that the inmate's claim arises from the same operative facts set forth in the grievance, nothing in the grievance system statutes supports the defendants' contention that the trial court—or an appellate court reviewing a trial court—can or should parse through an inmate's grievance to determine the nature of the inmate's claims and whether a person is a proper party based on the grievance's content.  *Accord Johnson v. Johnson,* 385 F.3d 503, 522 (5th Cir.

---

[1]    The Fifth Circuit has summarized the TDCJ grievance guidelines for inmates:
    The record in this case includes portions of the guidelines that TDCJ provides prisoners regarding how to file grievances.  Among other things, the rules direct inmates to write "briefly and clearly" but also to "be very specific about your grievance or your problem." They state that a grievance should contain facts, not legal words or conclusions.  They further direct the prisoner to "[t]ell us what action you want us to take to resolve your grievance or problem," but they specifically state that a prisoner should "not ask us to take disciplinary action against employees."
*Johnson v. Johnson,* 385 F.3d 503, 522 (5th Cir. 2004).

2004) (applying federal exhaustion statute) ("We are mindful that the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance is not a summons and complaint that initiates adversarial litigation. *Cf. Brown*[ *v. Sikes*, 212 F.3d 1205, 1207-10 (11th Cir. 2000)] (rejecting a rule that a prisoner must always name defendants in his grievance). But, at the same time, the grievance must provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit, and for many types of problems this will often require, as a practical matter, that the prisoner's grievance identify individuals who are connected with the problem.").

We have reviewed Brewer's grievances. They set forth the same operative facts as his petition with great detail. They provide prison administrators with fair notice of his allegations so that the alleged problem could have been addressed by them, and for each grievance, no administrative response asserted a lack of specificity or inadequacy. Therefore, to the extent the trial court dismissed Brewer's suit based on the defendants' grounds that the grievances did not adequately set forth the claims and parties as in this suit, we find no grounds upon which the trial court could have could have concluded that Brewer failed to comply with sections 14.005 and 501.008 in exhausting his administrative remedies, and we conclude that the trial court abused its discretion. We sustain Brewer's second issue.

### *Frivolousness*

The trial court's dismissal order states that Brewer's petition is frivolous.

Brewer's third issue complains that the trial court's dismissal for frivolousness is an abuse of discretion.

Section 14.003 allows a trial court to dismiss a suit filed by an indigent inmate, either before or after service of process, if the court finds that the claim is frivolous or malicious. TEX. CIV. PRAC. & REM. CODE ANN. § 14.003(a)(2). In determining whether the claim is frivolous or malicious, the trial court may consider whether (1) the claim's realistic chance of ultimate success is slight; (2) the claim has no arguable basis in law or in fact; (3) it is clear that the party cannot prove facts in support of the claim; or (4) the claim is substantially similar to a previous claim filed by the inmate because the claim arises from the same operative facts. *Id.* § 14.003(b).

### Standard of Review

> The Texas Supreme Court has expressed doubt about whether a trial court can properly dismiss a suit only because the claim's realistic chance of ultimate success is slight or because it is clear that the party cannot prove facts in support of the claim. *Johnson v. Lynaugh,* 796 S.W.2d 705, 706-07 (Tex. 1990). Practically speaking, therefore, the trial court is limited to determining whether the claim has an arguable basis in law or fact. *Bohannan v. Texas Bd. of Criminal Justice,* 942 S.W.2d 113, 115 (Tex. App.—Austin 1997, writ denied). When the trial court dismisses a claim without conducting a fact hearing, we are limited to reviewing whether the claim had an arguable basis in law. *Sawyer v. Texas Dep't of Criminal Justice,* 983 S.W.2d 310, 311 (Tex. App.—Houston [1st Dist.] 1998, pet. denied); *Leon Springs Gas Co. v. Rest. Equip. Leasing Co.,* 961 S.W.2d 574, 579 (Tex. App.—San Antonio 1997, no pet.); *Bohannan v. Texas Bd. of Criminal Justice,* 942 S.W.2d at 115; *In re Wilson,* 932 S.W.2d 263, 265 (Tex. App.—El Paso 1996, no writ).

*Smith,* 33 S.W.3d at 340; *see also Spurlock,* 88 S.W.3d at 736.

The issue before us is whether the trial court properly determined there was no arguable basis in law for the suit. *Spurlock,* 88 S.W.3d at 736 (citing *Lentworth v. Trahan,*

981 S.W.2d 720, 722 (Tex. App.—Houston [1st Dist.] 1998, no pet.)). A fact hearing on frivolousness is necessary only if the claim has an arguable basis in law. *Johns v. Johnson*, 2005 WL 428465, at *1 (Tex. App.—Waco Feb. 23, 2005, no pet.) (mem. op.) (citing *Denson v. T.D.C.J.-I.D.*, 63 S.W.3d 454, 459 (Tex. App.—Tyler 1999, pet. denied)). In this case, the trial court held no fact hearing on the defendants' motion to dismiss. Thus, its basis for determining that Brewer's claims were frivolous could not have been because it found they had no arguable basis in fact, but was because they had no arguable basis in law. *Id*. The issue of whether there was an arguable basis in law is a legal question that we review de novo. *Id.*; *Moreland v. Johnson*, 95 S.W.3d 392, 394 (Tex. App.—Houston [1st Dist.] 2002, no pet.).

To determine whether the trial court properly decided there was no arguable basis in law for Brewer's suit, we examine the types of relief and causes of action that Brewer pled in his petition to determine whether, as a matter of law, the petition stated a cause of action that would authorize relief. *Johns*, 2005 WL 428465, at *1; *Spurlock*, 88 S.W.3d at 736. We review and evaluate pro se pleadings by standards less stringent than those applied to formal pleadings drafted by lawyers. *Spurlock*, 88 S.W.3d at 736 (citing *Thomas v. Collins*, 860 S.W.2d 500, 503 (Tex. App.—Houston [1st Dist.] 1993, writ denied)). Also, in reviewing the dismissal of Brewer's suit, we are bound to take as true the allegations in his petition. *Jackson v. Tex. Dep't Crim. Justice-Inst. Div.*, 28 S.W.3d 811, 813 (Tex. App.—Corpus Christi 2000, pet. denied).

### Section 1983

Brewer's suit asserts claims under 42 U.S.C § 1983. Section 1983 provides a cause

of action and remedy when any "person" acting under color of state law deprives another of rights, privileges, or immunities protected by the U.S. Constitution or laws. *Gordon v. Scott,* 6 S.W.3d 365, 369 (Tex. App.—Beaumont 1999, pet. denied) (citing *Thomas,* 960 S.W.2d at 109). A section 1983 action will lie against state officials in their personal or individual capacities. *Id.* Brewer sued all seven defendants in their individual capacities.

Brewer's petition asserts two distinct claims:[2] (1) retaliation for Brewer's exercise of his constitutional right to access the courts; and (2) conspiracy to retaliate for attempting to exercise his constitutional right to access the courts.

### Retaliation

To prevail on a section 1983 retaliation claim, an inmate "must be able to show more than a personal belief that he is the victim of retaliation." *Johns,* 2005 WL 428465, at *3 (citing *Johnson v. Rodriguez,* 110 F.3d 299, 310 (5th Cir. 1997)).

> [A]n inmate must be able to establish: i) a specific constitutional right; ii) the defendants' intent to retaliate against him for exercising that right; iii) a retaliatory adverse act; and iv) causation—a showing that "but for the retaliatory motive, the complained of incident would not have occurred." *McDonald v. Steward,* 132 F.3d 225, 231 (5th Cir. 1998).

*Id.* Indisputably, "a prison official may not retaliate against or harass an inmate for exercising the right of access to the courts, or for complaining to a supervisor about a

---

[2] We do not discern in Brewer's petition a separate claim for the deprivation of Brewer's access to courts. Generally, and at least for an isolated deprivation of an inmate's access to court by denying or interfering with an inmate's access to the law library, the inmate must show actual injury, usually in the form of legal prejudice in the litigation the inmate is involved in. *See Johns,* 2005 WL 428465, at *2. But when an inmate alleges an ongoing pattern of denial of access and interference, actual injury need not be shown. *See Martin v. Ezeagu*, 816 F. Supp. 20, 24 (D.D.C. 1993). On remand, if Brewer disagrees with our assessment of his petition, he would not be precluded from explicitly pleading such a claim because the facts in his grievances and petition plainly support one.

guard's misconduct."  *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995).  The purpose of allowing retaliation claims under section 1983 is to ensure that prisoners are not unduly discouraged from exercising their constitutional rights.  *Morris v. Powell*, 449 F.3d 682, 686 (5th Cir. 2006).

### i.  specific constitutional right

"An inmate has a constitutional right of access to courts.  *Tighe v. Wall*, 100 F.3d 41, 42 (5th Cir. 1996).  That access must be adequate, effective, and meaningful.  *Bounds v. Smith*, 430 U.S. 817, 828, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977)."  *Johns*, 2005 WL 428465, at *2.  Brewer's petition plainly meets this element.

### ii.  intent to retaliate

The inmate must "allege a chronology of events from which retaliation may plausibly be inferred."  *Woods*, 60 F.3d at 1166 (quoting *Murphy v. Lane*, 833 F.2d 106, 108-09 (7th Cir. 1987) (holding that the plaintiff's complaint "set forth a chronology of events from which retaliatory animus on the part of defendants could arguably be inferred" sufficient to overcome a motion to dismiss)); *see also Johns*, 2005 WL 428465, at *3 (inmate's petition failed to allege facts or chronology of events showing retaliation).  Brewer's 26-page petition more than adequately details a chronology of events from which the defendants' retaliatory animus could arguably be inferred.  Brewer pleads, for example, that the defendants knew he had a court deadline, that the defendants knew he was assigned to work utility from 1:00 p.m. to 9:00 p.m., that the defendants knew that he could not obtain law-library lay-ins during his assigned work hours, that the defendants knew he had law-library lay-ins at 5:50 a.m., and that the defendants

told him that they did not care that he had lay-ins because they could make him work whenever they wanted to, including when Brewer had a scheduled lay-in or was actually in the law library.[3] Moreover, Brewer pleads that, on October 18, while attending his 5:55 a.m. to 7:55 a.m. law library session, at 6:54 a.m. Simental called the library and told the officer on duty that Brewer should not have a lay-in and told the

---

[3] Notable here is the defendants' contention in their brief, (Defendants-Appellees' Br. at 11), along with several of the prison administration's grievance responses, to the effect that "offenders may be ordered to report to work *at any time*." (C.R. 0051, 0055, 0057, 0059, 0061, 0063) [Emphasis added.] This position and this alleged prison policy heightens the analysis of Brewer's retaliation claim because it raises the specter of pretext in the denial of access to the law library, which segues into the inmate disciplinary process. *I.e.*, a prison guard or officer who seeks to deny an inmate access to the courts can simply order him to report to work when the inmate has a law library pass, and when the inmate disobeys the order, the guard or officer files a disciplinary charge against the inmate, who is then punished for violating policy.

The Fifth Circuit has addressed the thorny issue of an inmate's section 1983 retaliation claim arising out of an allegedly false disciplinary charge and the tension between an inmate's exercise of constitutional rights and the wide latitude needed by prison officials in the control and disciplining of inmates:

> While we remain fully supportive of the proposition that prison officials must have wide latitude in the control and disciplining of inmates, that "latitude does not encompass conduct that infringes on an inmate's substantive constitutional rights." Within that limitation we intend no undue restriction of actions legitimately motivated by concerns of prison order and discipline. . . .
>
> To assure that prisoners do not inappropriately insulate themselves from disciplinary actions by drawing the shield of retaliation around them, trial courts must carefully scrutinize these claims. To state a claim of retaliation an inmate must allege the violation of a specific constitutional right and be prepared to establish that but for the retaliatory motive the complained of incident—such as the filing of disciplinary reports as in the case at bar—would not have occurred. This places a significant burden on the inmate. Mere conclusionary allegations of retaliation will not withstand a summary judgment challenge. The inmate must produce direct evidence of motivation or, the more probable scenario, "allege a chronology of events from which retaliation may plausibly be inferred."

*Woods v. Smith,* 60 F.3d 1161, 1166 (5th Cir. 1995) (footnotes and citations omitted).

Regardless of that tension, an "action motivated by retaliation for the exercise of a constitutionally protected right is actionable, even if the act, when taken for a different reason, might have been legitimate." *Id.* at 1165 (citing *Mt. Healthy City School Distr. Bd. of Ed. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Jackson v. Cain,* 864 F.2d 1235 (5th Cir. 1989); *Smith v. Maschner,* 899 F.2d 940 (10th Cir. 1990); *Franco v. Kelly,* 854 F.2d 584 (2d Cir. 1988)). In addition, several of the administration responses to Brewer's grievances (C.R. 0069, 0071, 0085) confirm his claim that he had and was using law library lay-ins when Simental or others ordered him to work outside of his assigned work schedule, thus interfering with his library access. Thus, we are not hesitant to find that despite the *apparently* legitimate disciplinary charges, Brewer's section 1983 retaliation claim has an arguable basis in law.

Brewer v. Simental

officer to send Brewer to meet with Simental at the C-Hall Desk. Brewer met Simental and Townsend there, and they both stated, "We have already told you that you would not be attending the law library." They then placed Brewer under cell restriction, and when Brewer said that he would file another grievance against them, they both stated, "when we are done with you, you won't know how to spell grievance."

Brewer's petition adequately pleads retaliatory intent. *See Martin v. Ezeagu*, 816 F. Supp. 20, 24 (D.D.C. 1993) (inmate adequately pled ongoing pattern of harassment, interference, and exclusion from law library).

### iii.  retaliatory adverse act

Brewer's 26-page petition details the numerous times between October 7 and October 19 that Simental, at times alone and at times with Townsend and Davis, removed Brewer from the law library because he allegedly was not reporting to utility work in Ad. Seg. at 5:00 a.m. The petition details the several allegedly false disciplinary charges that were filed against him by Simental, Townsend, Davis, and Duke on the ground that Brewer was not reporting to utility work in Ad. Seg. at 5:00 a.m., yet Brewer pleads that he was already scheduled to work a 1:00 p.m. to 9:00 p.m. utility shift and he had law-library lay-ins starting at 5:50 a.m. Brewer's petition details the disciplinary punishment he received as a result of those charges:  commissary restrictions, cell restrictions, loss of contact visitation, property restriction, and line class reductions.

Brewer's petition adequately pleads retaliatory adverse acts.

*iv. causation*

Brewer's petition adequately details that, but for the defendants' orders for him to report to work during his law library lay-ins, the disciplinary charges and the resulting punishments would not have occurred.

In conclusion, in our de novo review of Brewer's petition, we hold that his section 1983 retaliation claim has an arguable basis in law. Accordingly, the trial court abused its discretion in dismissing it as frivolous. We sustain in part Brewer's third issue.

### *Conspiracy*

Brewer alleges that several other prison officials or employees conspired with Simental and his cohorts to assist in their retaliation against Brewer. Brewer alleges that Janet C. Taylor, an administrative assistant, assisted Simental by changing Brewer's work hours in the prison computer system in the middle of Simental's course of conduct to keep Brewer out of the library and by not notifying Brewer of this change (he alleged receiving notice of the changed hours after Simental filed a disciplinary report charging Brewer with not reporting to work as ordered and scheduled). [4]

Brewer alleges that John D. Seigle, a corrections sergeant and law library supervisor, assisted Simental on October 19 by acceding to Simental's demand that Brewer's lay-in for that day, which Seigle had issued, be taken back. According to Brewer, while he was in the law library, Seigle was called to Simental's office, and when Seigle returned, he said that Simental had accused him of "taking sides" with an offender instead of with a co-worker and ranking officer.

---

[4] The administration response to one of Brewer's grievances appears to support this allegation; it notes that there was "a written notice of change to job hours as of 10-20-2005 at 9:26 am." (C.R. 0061).

Lindsay Lewis, the Warden's grievance investigator, and Robert Losack, a corrections captain and disciplinary hearing officer, are alleged to have assisted Simental in the grievance and disciplinary process by ignoring evidence and preventing Brewer's access to evidence to defend his claims and defenses. Brewer also alleges that Lewis and Losack had the authority to stop Simental's retaliation but failed to do so. Instead, they removed Brewer's Ad. Seg. restriction, denied Brewer's grievances, and disciplined Brewer.

In a federal suit with similar claims alleged, the district court stated the applicable law:

> To allege a claim of conspiracy to deprive a plaintiff of his constitutional rights, a plaintiff must allege, "(1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or deprivation of any right or privilege of a citizen of the United States." *Hilliard v. Ferguson,* 30 F.3d 649, 652-53 (5th Cir. 1994). Where all of the defendants are members of the same collective entity, however, the conspiracy does not involve two or more people. *Id.* at 653; *see also Moody v. Jefferson Parish Sch. Bd.,* 803 F. Supp. 1158, 1166 (E.D. La. 1992) (School Board, Principal, Vice-Principal, and various teachers are all employed by the Jefferson Parish School Board and, thus, are a single entity), *aff'd,* 2 F.3d 604 (5th Cir. 1993); *Hankins v. Dallas Indep. Sch. Dist.,* 698 F. Supp. 1323, 1330 (N.D. Tex. 1988) (high school and its officials constitute a single entity); *Chambliss v. Foote,* 421 F. Supp. 12, 15 (E.D. La. 1976) ("the university and its officials are considered as constituting a single legal entity which cannot conspire with itself"), *aff'd,* 562 F.2d 1015 (5th Cir. 1977).

*Brown v. Carr,* 2008 WL 2571713, at *5 (S.D. Tex. June 26, 2008). Because all of the defendants were members of the same collective entity (TDCJ-ID's McConnell Unit), the plaintiff did not state a separate legal claim for conspiracy apart from his retaliation

claim. *See id.*

Brewer's conspiracy claim suffers from the same flaw; all of the defendants who allegedly conspired are or were Wynne Unit employees at the time of the alleged acts. Accordingly, they could not have conspired under the applicable law to afford Brewer an actionable section 1983 conspiracy claim, and that claim thus has no arguable basis in law.[5] Accordingly, the trial court did not abuse its discretion in dismissing it as frivolous. We overrule in part Brewer's third issue.

## Conclusion

Having sustained Brewer's second issue and his third issue in part, we reverse the trial court's dismissal order and remand this cause for further proceedings consistent with this opinion.


BILL VANCE
Justice


Before Chief Justice Gray,
      Justice Vance, and
      Justice Reyna
      (Chief Justice Gray dissents. A separate opinion will not issue.)
Reversed and remanded
Opinion delivered and filed September 10, 2008
[CVPM]

---

[5] The fact that Brewer's conspiracy claim is not actionable does not render the allegations—which are obviously disturbing if true—any less egregious, especially with Brewer's access-to-courts constitutional backdrop. *See Wood,* 60 F.3d at 1165 (noting other circuit's opinion that "an allegation of retaliatory disciplinary charges could give rise to either an independent section 1983 action or be part of a procedural due process review of the disciplinary hearing") (citing *Smith v. Maschner,* 899 F.2d 940, 946-48 (10th Cir. 1990)); *see also id.* ("the court with which [the inmate] sought contact, and not his jailer, will determine the merits of his claim") (quoting *Andrade v. Hauck,* 452 F.2d 1071, 1072 (5th Cir. 1971)).