Opinion issued February 16, 2012

 

 



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00961-CV

———————————

 

Ralph Wallace Shamblin, Appellant



 



 

On Appeal from the 412th District Court

Brazoria County, Texas



Trial Court Case No. 59616

 



 

MEMORANDUM OPINION

          Appellant
Ralph Wallace Shamblin, an indigent inmate, filed
suit against Margaret Curran and Jean Mayo, two employees of the Texas
Department of Criminal Justice (“TDCJ”), alleging that they had improperly
converted his property.[1]  The trial court dismissed Shamblin’s
claim as untimely pursuant to Civil Practice and Remedies Code section
14.005.  See Tex. Civ. Prac. & Rem. Code Ann. § 14.005(b) (Vernon 2002).  In six issues, Shamblin
contends that (1) the trial court erroneously failed to file findings of fact
and conclusions of law; (2) the trial court abused its discretion in
dismissing as frivolous a case that has an arguable basis in law or fact; (3)
the trial court erroneously dismissed the case as untimely because Shamblin originally filed suit in the Justice of the Peace
court within the 31-day statute of limitations for inmate litigation, and this
filing tolled limitations; (4) the trial court failed to consider that the suit
“lay stagnant” in the justice court and that Shamblin
had diligently attempted to “move forward” and serve the defendants; (5) Civil
Practice and Remedies Code Chapter 14 is facially unconstitutional; and (6) the
justice court never signed an order of dismissal, and, thus, the case remains actively
pending in that court.

          We
affirm.

Background

          Shamblin, an inmate at the Wayne Scott Unit, filed this
suit against Margaret Curran, the property officer at the Clemens Unit, and
Jean Mayo, the property officer at the Wayne Scott Unit, alleging theft of his
property, including legal texts, other books, legal papers, and various
commissary items, by conversion.  Shamblin alleged that the defendants took his “property
into their possession” and “then stepped outside the boundaries of their
official duties as TDCJ Property Officers and further deprived [him] of his
property.”  He further alleged that the
defendants “made a conscious decision to deny [him] his right to disposition of
property or to meet the necessary requirements to have his property returned.”

          Shamblin filed a Step One grievance with the Wayne Scott
Unit on February 3, 2010.  He received
notice of the denial of his Step One grievance on March 24, 2010.  Shamblin then filed
a Step Two grievance, which was denied on April 12, 2010.  He stated, in his motion to reinstate
supported by an unsworn declaration, that he received notice of this decision
on April 27, 2010.[2]

Shamblin initially
filed suit in forma pauperis
in the Justice of the Peace Court Number 2 of Brazoria County and sought the
recovery of compensatory and exemplary damages totaling $9,995.  Although Shamblin’s
original petition bears a file-stamped date of June 16, 2010, Shamblin alleged in an unsworn declaration that he first
gave his original petition to the Wayne Scott Unit law library supervisor to be
mailed to the justice court on May 10, 2010. 
Because the justice court clerk never returned a copy of the petition in
the self-addressed stamped envelope that Shamblin had
enclosed, he had his father hand-deliver three copies of the petition to the
clerk’s office on May 20, 2010.  Shamblin included copies of his written grievance forms and
the decisions of the grievance committee with his original petition.

On June 21, 2010, Shamblin filed an application to proceed in forma pauperis,
accompanied by a certified copy of his inmate trust fund account records for
the previous six months.  He also filed a
“Declaration Relating to Previous Filings,” in which he averred that he had
filed six previous suits in state and federal court, five of which were
petitions for writs of mandamus and applications for writs of habeas
corpus.  Additionally, Shamblin explicitly stated in this document that he “does
not challenge the action or constitutionality of [Civil Practice and Remedies
Code Chapter 14].”

On June 17, 2010, Shamblin wrote a letter to the justice court asking the
court to dismiss the case and transfer it to the Brazoria County district
court.  According to Shamblin,
his father had a conversation with one of the justice court clerks, who
allegedly informed him that “TDCJ [does] not recognize or honor J.P. or County
bench warrants in civil claims and [the justice] Court was not set up for
teleconference between parties in open court.” 
The Justice of the Peace responded with a letter stating, “We received
your request to transfer the above case to the District Court.  Upon receipt of a dismissal letter, and
[request] for transfer, I will order my clerk to transfer the file.”  On July 1, 2010, Shamblin
wrote another letter to the justice court explaining his concerns that (1) if
he voluntarily dismisses the case in the justice court and then files suit in
the district court, the 31-day statute of limitations in which to file inmate
litigation claims pursuant to Chapter 14 after the denial of a Step Two
grievance will not be tolled, and, thus, his claim in
the district court will be untimely; and (2) TDCJ will not recognize a justice
court bench warrant.  He therefore sought
transfer of the case to the district court. 
Shamblin then received a letter from the
Justice of the Peace stating, “Justice of the Peace court cannot transfer a
case to District Court.  You may either
have an attorney represent you, or refile your case
in District Court.”

On July 30, Shamblin
filed a letter with the justice court clerk, in which
he requested that the clerk dismiss his case and transfer it to the Brazoria
County District Clerk.  The justice court
did not sign an order transferring Shamblin’s case to
the Brazoria County district court, and it never signed a formal order
dismissing the case after Shamblin’s request for a
nonsuit.

On August 11, Shamblin’s
father retrieved the case file from the justice court clerk and attempted to
file the suit in the district court.  However,
the chief deputy clerk refused to accept the filing because Shamblin
had not made arrangements to pay the filing and service of citation fees.  Ultimately, the district court clerk accepted
the case file on August 18, 2010, although the documents were not file-stamped
until September 9, 2010.

The district court clerk assigned a
cause number to Shamblin’s case, and, before Shamblin could serve Curran and Mayo and without holding a
hearing, the district court dismissed the case on September 28, 2010.  The order of dismissal specifically stated
that the case “is dismissed as frivolous for the reason that [Shamblin] failed to file the claim before the 31st day
after the date [Shamblin] received the written
decision from the grievance system as required by § 14.005 [Civil Practice
and Remedies Code].”  Shamblin
then timely filed a request for findings of fact and conclusions of law.

On October 25, 2010, the district
court clerk received Shamblin’s notice of appeal, as
well as several other motions, including a motion to reinstate the case on the
docket.  In his motion to reinstate, Shamblin argued, for the first time, that Chapter 14 of the
Civil Practice and Remedies Code, which governs in forma pauperis inmate litigation, is
facially unconstitutional and that using his inmate trust account to satisfy the
costs of the suit violates equal protection. 
The Brazoria County district clerk sent a letter to Shamblin,
dated October 28, 2010, informing him “[i]n response
to [his] motions and requests” that his case “is now under the jurisdiction of
the 1st Court of Appeals” and that “[a]ll the filed
documents will be forwarded to the 1st Court of Appeals when the clerk’s record
is due.”  The record thus affirmatively
demonstrates that Shamblin’s motion to reinstate was
never presented to the trial court.

Timeliness of Petition

In his third issue, Shamblin contends that the district court erred in dismissing
his case because he timely and properly filed suit in the justice court, which
tolled the 31-day statute of limitations pursuant to Civil Practice and
Remedies Code section 14.005(b).  In his
fourth issue, he contends that, in dismissing the case, the district court did
not consider that the case “lay stagnant” in the justice court “despite
repeated attempts to move forward and have [the] defendants served.”  We consider these issues together.

Chapter 14 of the Civil Practice
and Remedies Code applies to lawsuits brought by inmates in a “district,
county, justice of the peace, or small claims court” if the inmate seeks to
proceed in forma pauperis
by filing an affidavit or unsworn declaration of inability to pay costs.  Tex.
Civ. Prac. & Rem. Code Ann. § 14.002
(Vernon Supp. 2011); Scott v. Gallagher,
209 S.W.3d 262, 265 (Tex. App.—Houston [1st Dist.] 2006, no pet.).  If the inmate desires to proceed in forma pauperis
under this chapter, he must meet certain procedural requirements, such as (1)
filing an affidavit or unsworn declaration describing all prior pro se lawsuits
filed by the inmate, and (2) filing a certified copy of the inmate’s trust
account statement.  See Tex. Civ. Prac. & Rem. Code Ann. § 14.004(a), (c)
(Vernon Supp. 2011), § 14.006(f) (Vernon 2002); Scott, 209 S.W.3d at 265.  If
the claim is subject to the grievance system established by Government Code
section 501.008, the inmate shall file with the court (1) an affidavit or
unsworn declaration stating the date that the grievance was filed and the date
the written decision was received by the inmate and (2) a copy of the grievance
system’s written decision.  Tex. Civ. Prac.
& Rem. Code Ann. § 14.005(a) (Vernon 2002); see also Tex. Gov’t Code Ann. § 501.008(a) (Vernon 2004) (“A
remedy provided by the grievance system is the exclusive administrative remedy
available to an inmate for a claim for relief against the [Department of
Criminal Justice] that arises while the inmate is housed in a facility operated
by the department or under contract with the
department . . . .”).

“A court shall dismiss a claim if the inmate fails to file the claim before
the 31st day after the date the inmate received the written decision from the
grievance system.”  Tex. Civ. Prac.
& Rem. Code Ann. § 14.005(b) (emphasis added); Wallace v. Tex. Dep’t of Criminal Justice,
36 S.W.3d 607, 611 (Tex. App.—Houston [1st Dist.] 2000, pet. denied); see also Moreland v. Johnson, 95 S.W.3d
392, 395 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (“A suit that is not
timely filed pursuant to section 14.005(b) is barred and may be dismissed with
prejudice.”).  Under Chapter 14, a trial
court may dismiss an inmate’s lawsuit for failing to comply with the chapter’s
procedural rules.  Leachman v. Dretke, 261 S.W.3d 297, 303 (Tex.
App.—Fort Worth 2008, no pet.); see also
Mason v. Wood, 282 S.W.3d 189, 193 (Tex. App.—Beaumont 2009, no pet.) (noting that, because failure to file suit within 31 days of
exhausting administrative remedies cannot be cured by re-filing, trial court
may dismiss with prejudice under this section).

A voluntary nonsuit “extinguishes a
case or controversy from the moment the motion [for nonsuit] is filed or an
oral motion is made in open court” and it “renders the merits of the nonsuited
case moot.”  Travelers Ins. Co. v. Joachim, 315 S.W.3d 860, 862 (Tex. 2010)
(quoting Univ. of Tex. Med. Branch at
Galveston v. Estate of Blackmon ex rel. Shultz, 195 S.W.3d 98, 100 (Tex.
2006) (per curiam) and citing Villafani v. Trejo, 251 S.W.3d 466, 469 (Tex. 2008)).  Thus, a lawsuit that is voluntarily nonsuited
“does not interrupt the running of the statute of limitations.”  Bailey
v. Gardner, 154 S.W.3d 917, 920 (Tex. App.—Dallas 2005, no pet.); see also Cunningham v. Fox, 879 S.W.2d
210, 212 (Tex. App.—Houston [14th Dist.] 1994, writ denied) (“A dismissal is
the equivalent of a suit never having been filed.  Therefore, if a suit is dismissed, the
statute of limitations is not tolled for any new pleading filed.”).  Moreover, “[t]aking
a voluntary nonsuit for tactical advantage will not support an equitable
extension of the limitations period.”  Bailey, 154 S.W.3d at
920.

In the indigent-inmate litigation
context, the San Antonio Court of Appeals, in a memorandum opinion, previously
addressed whether an inmate timely filed suit pursuant to section 14.005(b)
when he originally filed suit within the 31-day limitations period, moved to
withdraw the suit, and then filed a new suit after the expiration of the
limitations period.  See Payne v. Dretke, No. 04-05-00876-CV,
2006 WL 927338, at *1 (Tex. App.—San Antonio Apr. 12, 2006, pet. denied) (mem. op.).  The San
Antonio court reasoned that for an inmate who has pursued his grievance through
the necessary administrative procedures and has exhausted his administrative
remedies, “thirty-one days to convert that grievance into a lawsuit is ample
time to act.”  Id. (citing Randle v. Wilson,
26 S.W.3d 513, 516 (Tex. App.—Amarillo 2000, no pet.)).  The court declined to hold, as Payne had
argued, that Payne “should be allowed to proceed based upon his original filing
date,” and instead concluded that dismissal of Payne’s suit was mandatory
because “[r]egardless of Payne’s reasoning for
withdrawing his lawsuit on August 31, 2004 and his subsequent delay in
re-filing on March 10, 2005, Payne did not file his pending lawsuit until the
thirty-one day period had elapsed . . . .”  Id.

Here, Shamblin
originally filed suit in the justice court no later than May 20, 2010, which is
the date his father hand-delivered his petition to the justice court clerk.[3]  In his unsworn declaration related to
previous filings, Shamblin stated that he received
written notice of the grievance system’s decision on “April 20–22, 2010.”[4]  Thus, he timely filed his original suit in
the justice court within section 14.005(b)’s thirty-one-day window.  Shamblin
acknowledges, however, that he voluntarily nonsuited this suit by mailing a
“request for dismissal” letter to the justice court clerk on July 30,
2010.  This nonsuit was effective when it
was filed with the justice court clerk, and it returned the parties to “the
position they were in before the lawsuit was brought.”  Parker
v. JPMorgan Chase Bank, 95 S.W.3d 428, 431–32 (Tex. App.—Houston [1st
Dist.] 2002, no pet.); see also Shultz,
195 S.W.3d at 100 (“[T]he nonsuit extinguishes a case or controversy from ‘the
moment the motion is filed’ or an oral motion is made in open court; the only
requirement is ‘the mere filing of the motion with the clerk of the court.’”).

Thus, because Shamblin
voluntarily nonsuited his case in the justice court, that suit “does not
interrupt the running of the statute of limitations.”  Bailey,
154 S.W.3d at 920; Cunningham,
879 S.W.2d at 212.  Shamblin
did not file his case in the Brazoria County district court until August 18,
2010, nearly four months after he received the written decision from the
grievance system.  Because Shamblin filed the suit at issue here in the district court
more than thirty-one days after he received written notice of the grievance
decision, the trial court correctly determined that Shamblin’s
suit was not timely filed pursuant to Civil Practice and Remedies Code section
14.005(b).[5]

We overrule Shamblin’s
third and fourth issues.[6]

Failure of Justice Court to Sign Order of Dismissal

In his sixth issue, Shamblin contends that his case remains active in the
justice court because the Justice of the Peace never signed a formal order of
dismissal after Shamblin filed his request to voluntarily
nonsuit the case.

As we stated above, a voluntary nonsuit
extinguishes a case or controversy “from ‘the moment the motion is filed’ or an
oral motion is made in open court; the only requirement is ‘the mere filing of
the motion with the clerk of the court.’” 
Shultz, 195
S.W.3d at 100.  “While the date on
which the trial court signs an order dismissing the suit is the ‘starting point
for determining when a trial court’s plenary power expires,’ a nonsuit is
effective when it is filed.”  Id. 
No court order is required for the nonsuit to take effect.  Epps v. Fowler, 351 S.W.3d 862, 868 (Tex. 2011).  At the instant a motion for nonsuit is filed,
“the action is extinguished [and] only collateral matters or claims for
affirmative relief previously initiated by the opposing party and independent
of the plaintiff’s cause of action remain pending.”  Trigg
ex rel. Trigg v. Moore, 335 S.W.3d 243, 245 (Tex. App.—Amarillo 2010, pet.
denied); see also Tex. R. Civ. P. 162 (providing that
nonsuit shall not prejudice, for example, opposing party’s right to be heard on
pending claim for affirmative relief).  A
written order of dismissal is not required as “a condition to the
extinguishment of the action”; rather, the order is “a mere formality
memorializing what already occurred and serves the purpose of triggering
appellate deadlines and the time period within which the trial court’s plenary
jurisdiction begins to end.”  Trigg, 335 S.W.3d at 245 n.1; see also In re Greater Houston Orthopaedic Specialists, Inc., 295 S.W.3d 323, 325
(Tex. 2009) (orig. proceeding) (“Granting a nonsuit is a ministerial act, and a
plaintiff’s right to a nonsuit exists from the moment a written motion is filed
or an oral motion is made in open court, unless the defendant has, prior to
that time, sought affirmative relief.”).

Shamblin
acknowledges that he filed a motion for voluntary nonsuit with the justice
court.  He contends, however, that his
suit is still active in that court because the Justice of the Peace never
signed a written order dismissing the case after Shamblin
filed his motion for nonsuit.  Although
the justice court had a ministerial duty to sign an order dismissing the case
after Shamblin filed his motion for nonsuit with the
clerk, its failure to sign such an order does not negate the effect of the nonsuit.  See
Trigg, 335 S.W.3d at 245 & n.1. 
In other words, although the justice court erred in not signing a
dismissal order, Shamblin’s motion for nonsuit was
still effective at the time he filed it with the justice court clerk, and the
motion still operated to extinguish the case and return Shamblin
to the position he was in before he filed the suit.  Id.;
see also Shultz, 195 S.W.3d at 100.

We therefore conclude that the voluntary
nonsuit extinguished Shamblin’s cause of action in
the justice court; his case is not “active” in that court.

We overrule Shamblin’s
sixth issue.

Failure to File Findings of Fact and Conclusions of
Law

In his first issue, Shamblin contends that the district court harmfully erred
in failing to file findings of fact and conclusions of law after it dismissed Shamblin’s case because “there are multiple grounds upon
which the trial court might have based its decision to order the case dismissed,”
and, thus, in presenting his case to this Court, he must guess the reason why
his case was dismissed.

Texas Rule of Civil Procedure 296
provides, “In any case tried in the district or county court without a jury,
any party may request the court to state in writing its findings of fact and
conclusions of law.”  Tex. R. Civ. P. 296.  When such a request is made, the court “shall
file its findings of fact and conclusions of law within twenty days after a
timely request . . . .”  Tex.
R. Civ. P. 297.  The Fourteenth
Court of Appeals has held, however, that Rules 296 and 297 “do not apply when a
court dismisses a case under Chapter 14 of the Civil Practice and Remedies Code
without holding a fact hearing.”  Retzlaff v. Tex. Dep’t of Criminal
Justice, 94 S.W.3d 650, 655 (Tex. App.—Houston [14th Dist.] 2002, pet.
denied).  If the trial court does
not hold a fact hearing, 

the court’s dismissal can only
be affirmed if the prisoner’s suit lacks a basis in law.  In such a situation, the trial court is not acting
as a fact finder.  Therefore, as in a
review of a summary judgment proceeding, the failure to file findings of fact
must be harmless.

 

Id.; see also Timmons v. Luce, 840 S.W.2d
582, 586 (Tex. App.—Tyler 1992, no writ) (“Appellant’s suit was dismissed prior
to any hearings or trial; thus no facts were ever introduced into
evidence.  A court cannot make findings
of fact solely from the record on file without hearing evidence, and findings
so made would be without effect.”).

          As in
Retzlaff
and Timmons, the district court in
this case did not hold an evidentiary hearing before it dismissed Shamblin’s case. 
Thus, because the district court did not hold a fact hearing, did not
hear any evidence, and did not act as a fact finder, its failure to file
findings of fact and conclusions of law is harmless.  See Retzlaff, 94 S.W.3d at 655; Timmons, 840 S.W.2d at 586.

          We
overrule Shamblin’s first issue.

Facial Unconstitutionality of Chapter 14

Finally, in his fifth issue, Shamblin contends that Chapter 14 of the Civil Practice and
Remedies Code places a harsher burden on him because he is indigent and, thus,
is unconstitutional on its face.  He also
contends that complying with section 14.005(b) denies him access to the courts,
that section 14.005(b) violates his right to substantive due process, and that
Chapter 14 is a “special law” in violation of Article III, Section 56 of the
Texas Constitution.

Texas Rule of Appellate Procedure
33.1(a)(1)(A) requires a party, as a prerequisite for appellate review, to make
his complaint to the trial court by a timely request, objection, or motion that
specifically states the grounds for the ruling sought and to obtain a ruling on
that complaint from the trial court.  Tex. R. App. P. 33.1(a)(1)(A); see In re
L.M.I., 119 S.W.3d 707, 711 (Tex. 2003) (applying Rule 33.1 to due process
challenge).  Constitutional challenges
must be raised in the trial court or they are not preserved for appellate
review.  Brewer v. Simental, 268 S.W.3d 763, 767
(Tex. App.—Waco 2008, pet. denied) (stating facial challenge to
constitutionality of Chapter 14 not preserved for appellate review because
inmate failed to raise argument in trial court); In re S.A.P., 169 S.W.3d 685, 692 (Tex. App.—Waco 2005, no pet.)
(“Due process and other alleged constitutional violations also must be raised
in the trial court for them to be preserved for appellate review.”).

Here, in his unsworn declaration
regarding previous filings, Shamblin explicitly
stated that he was not challenging the constitutionality of Chapter 14.  After the district court ultimately dismissed
his cause of action as untimely, Shamblin argued in
his motion to reinstate, for the first time, that Chapter 14 is facially
unconstitutional.  Specifically, he
argued that, 

once this court assesses
costs and orders its payment out of my inmate trust account, the continued
application of Chapter 14 will be in violation of equal protection and is thus
unconstitutional because my suit is treated differently than the suit of a
non-indigent inmate who paid costs of suit in advance and thus would not be
governed by Chapter 14.

 

This was the extent of Shamblin’s
constitutional challenge in his motion to reinstate.  This motion, along with his motion for a
bench warrant and a demand for a jury trial, was received by the Brazoria
County district clerk on October 25, 2010, the same day it received Shamblin’s notice of appeal to this Court.  The record also includes the following letter
from the district clerk’s office to Shamblin, dated
October 28, 2010:

In response to your motions
and requests, your case is now under the jurisdiction of the 1st Court of
Appeals, a copy of the notice of assignment to the appeals court is
enclosed.  All the filed documents will
be forwarded to the 1st Court of Appeals when the clerk’s record is due.

 

Thus, the record affirmatively demonstrates that Shamblin’s motion to reinstate, the only document that
contained a constitutional challenge to Chapter 14, was never presented to the district
court and that the district court never ruled on this motion.

          We
therefore conclude that because the record indicates that Shamblin’s
facial unconstitutionality challenge was never presented to the district court
and he never obtained a ruling on this challenge from the district court, he
failed to preserve this contention for appellate review.[7]

          We
overrule Shamblin’s fifth issue.

Conclusion

          We
affirm the judgment of the trial court.

 

 

                                                                   Evelyn
V. Keyes

                                                                   Justice


 

Panel
consists of Justices Keyes, Bland, and Sharp.











[1]
          The trial court dismissed Shamblin’s suit prior to service of citation.  As a result, Curran and Mayo, the defendants
listed in Shamblin’s petition, were never informed of
the suit and were not given an opportunity to enter an appearance in this
case.  Shamblin
also does not raise any issues with respect to any of the named
defendants.  See In re Douglas, 333 S.W.3d 273, 277 n.1 (Tex. App.—Houston [1st
Dist.] 2010, pet. denied).  Thus, there
are no “appellees” for the purpose of this appeal.  Id.;
see Yilmaz v.
McGregor, 265 S.W.3d 631, 637 (Tex. App.—Houston [1st Dist.] 2008, pet.
denied) (“To be a ‘party’ to a lawsuit, one generally must be named in the
pleadings and either be served, accept or waive service, or make an
appearance.  Merely being named in a
petition as a defendant does not make one a ‘party’ to the lawsuit.”); see also Mapco, Inc. v. Carter, 817
S.W.2d 686, 687 (Tex. 1991) (holding judgment may not be rendered against
defendant unless upon service, acceptance or waiver of process, or appearance);
Showbiz Multimedia, LLC v. Mountain
States Mortg. Ctrs., Inc., 303 S.W.3d 769, 771 n.3
(Tex. App.—Houston [1st Dist.] 2009, no pet.) (appellee must
be party to trial court’s final judgment and someone against whom appellant
raises issues or points of error in appellant’s brief) (citing
Gray v. Allen, 41 S.W.3d 330, 331 n.2
(Tex. App.—Fort Worth 2001, no pet.)).





[2]
          In contrast to his motion to
reinstate, Shamblin stated in his unsworn declaration
of previous filings that he received a copy of the Step Two grievance decision
on “April 20–22, 2010, through the TDCJ-CID Truck Mail Delivery System.”  He also averred that this suit was initiated
on May 12, 2010, and that the court received “[t]he original complaint, copies,
and all exhibits” on May 20, 2010.





[3]
          Shamblin’s
original petition is file-stamped with the date of June 16, 2010.  “Generally, ‘an instrument is deemed in law
filed at the time it is left with the clerk, regardless of whether or not a
file mark is placed on the instrument and regardless of whether the file mark
gives some other date of filing.’”  Warner v. Glass, 135 S.W.3d 681, 684
(Tex. 2004) (per curiam) (quoting Standard Fire Ins. Co. v. LaCoke, 585 S.W.2d 678, 680 (Tex. 1979)).  Thus, we consider the filing date to be May
20, 2010, the date Shamblin’s father delivered the
petition to the justice court clerk, instead of June 16, 2010, the file-stamped
date.

 





[4]
          The record contains a
discrepancy regarding the date that Shamblin
allegedly received notice of the denial of his Step Two grievance.  His unsworn declaration relating to his
previous filings stated that he received notice on “April 20–22, 2010.”  In his motion to reinstate, however, he
averred that he received notice on April 27, 2010.





[5]
          We also note that Shamblin originally filed suit in a court that had
subject-matter jurisdiction over his claim and in the county of proper
venue.  See Tex. Gov’t Code Ann.
§ 27.031(a)(1) (Vernon Supp. 2011) (providing that justice court has
original jurisdiction over “civil matters in which exclusive jurisdiction is
not in the district or county court and in which the amount in controversy is
not more than $10,000, exclusive of interest”); Tex. Civ. Prac. & Rem. Code Ann.
§ 14.002(a) (Vernon 2002) (providing that Chapter 14 applies to indigent
inmate suits brought in “district, county, justice of the peace, or small
claims court”); id. § 15.019(a)
(Vernon 2002) (“[A]n action that accrued while the plaintiff was housed in a
facility operated by or under contract with the Texas Department of Criminal
Justice shall be brought in the county in which the facility is
located.”).  This is not a situation in
which Shamblin originally filed suit within the
limitations period in the “wrong” court.

 





[6]
          Because we conclude that the
trial court correctly determined that Shamblin did
not timely file suit in the district court, we need not address Shamblin’s second issue—that the trial court abused its discretion in
dismissing the suit because the suit has an arguable basis in law or fact.  See
Tex. Civ. Prac.
& Rem. Code Ann. § 14.005(b) (Vernon 2002) (“A court shall dismiss a claim if the inmate
fails to file the claim before the 31st day after the date the inmate receives
the written decision from the grievance system.”) (emphasis
added).





[7]
          Shamblin
did not raise, in his motion to reinstate, the
arguments that:  (1) section 14.005(b)
denied him his right of access to the courts; (2) section 14.005(b) violated
his substantive due process rights; and (3) Chapter 14 constituted an
impermissible “special law.”  These
arguments, therefore, were also not preserved for appellate review.  See
Tex. R. App. P. 33.1(a)(1)(A); Brewer v. Simental, 268 S.W.3d 763, 767 (Tex. App.—Waco 2008,
pet. denied) (“Constitutional violations must be raised in the trial court to
be preserved for appellate review.”).