In re Raymond **WINGFIELD**, State Counsel for Offenders and Kim Vernon, Director, State Counsel for Offenders.

No. 12–05–00151–CV.

Court of Appeals of Texas, Tyler.

July 7, 2005.

Daniel E. Maeso, Adrian L. Young, Austin, for relator.

Susan Lea Hays, for respondent.

Mark D. Mullin, Melinda Mayo, Potter County Dist. Atty., Amarillo, Barbara Law, for real party in interest.

Panel consisted of WORTHEN, C.J., GRIFFITH, J., and DeVASTO, J.

## OPINION

JAMES T. WORTHEN, Chief Justice.

Relators Raymond Wingfield, State Counsel for Offenders (SCFO), and Kim Vernon, SCFO Director, seek mandamus relief from two orders signed on December 15, 2004 and April 6, 2005, respectively, by Respondent, the Honorable Jim Parsons, presiding judge of the 3rd Judicial District Court of Houston County, Texas, sitting in the 349th Judicial District Court of Houston County. We conditionally grant the petition in part and deny in part.

### BACKGROUND

The underlying proceeding is a criminal case brought against Wingfield by the State of Texas. Wingfield, along with his codefendant, Dalton Collins, is charged with multiple serious crimes allegedly committed during an escape attempt from a prison unit operated by the Texas Department of Criminal Justice. On November 1, 2004, Respondent signed an order appointing SCFO[1] to represent Wingfield

---

1. SCFO represents indigent inmates who are charged with offenses committed while in the

and Collins. Approximately two weeks later, SCFO filed a motion to withdraw as Wingfield's counsel citing a likely conflict in representing both defendants. On December 15, 2004, without a hearing, Respondent overruled SCFO's motion and ordered SCFO to take all reasonable steps to erect a "Chinese Wall" during its dual representation of Wingfield and Collins. On February 16, 2005, at SCFO's request, the trial court set a hearing for April 4 to permit SCFO to re-urge its motion to withdraw.

On February 18, eleven of the thirteen attorneys on the Houston County indigent defense appointment list filed a plea in intervention. Intervenors alleged that the county is to pay $250 of the fee charged by non-SCFO defense counsel appointed to represent indigent inmate defendants and that the state comptroller "shall" pay the remainder that is properly certified. *See* Tex.Code Crim. Proc. Ann. § 26.051(h) (Vernon Supp.2004–05). However, Intervenors averred that "[d]espite certification [of the fee] ..., the comptroller has repeatedly refused to issue payment to court appointed attorneys in these types of cases in the past due to insufficient funds available." Consequently, Intervenors concluded, allowing SCFO to withdraw and appointing any of the intervenors to represent Wingfield would violate appointed counsel's rights under the United States and Texas constitutions.

On February 21, Respondent signed an order permitting the intervention "for the limited purpose of representing Intervenors' interests at the hearing on the State Counsel for Offenders Motion to Withdraw." On April 4, SCFO filed a motion to strike the plea in intervention. On the same day, the court held an evidentiary hearing.

At the hearing, Respondent first heard argument on SCFO's motion to strike. Respondent then ruled that he would "leave [Intervenors] in limited to this sole issue with regard to your withdrawal of my prior order. I view it, though, as an amicus curiae. Their participation will not in any way help or harm the substantive rights of the defendants involved."

SCFO presented uncontroverted evidence that it could not provide conflict-free representation to Wingfield. During Director Vernon's testimony, Respondent asked what steps had been taken to comply with the Chinese Wall portion of the December 15, 2004 order. Director Vernon informed Respondent that no steps had been taken.

Intervenors pointed out that payments for indigent inmate defense counsel claims are limited to $25,000 per claim and to $25,000 in cumulative payments to a single claimant during a biennium. *See* Tex. Gov't Code Ann. § 403.074(d) (Vernon 2005). If insufficient funds are available to pay the claim, it may not be paid until the Legislature provides for payment. *See id.* § 403.074(d). Intervenors presented evidence that any claim over $25,000 must be submitted in its entirety to the Legislature for payment and that the attorney's fee for representing Wingfield could exceed $25,000. Intervenors also presented evidence that (1) even for claims under $25,000, the Legislature has not appropriated dedicated funds; (2) the miscellaneous fund from which those claims are paid had a balance of approximately $9 on the date of the hearing; (3) no further claims can be paid from the miscellaneous fund this fiscal year; (4) additional funds will

custody of Texas Department of Criminal Justice, Institutional Division. *See* Tex.Code Crim.

Proc. Ann. art. 26.051(e) (Vernon 2004–05).

not be available until September 2005, provided the Legislature makes that appropriation; and (5) the comptroller had no claims pending for attorney's fees. Finally, Intervenors presented evidence to support their contention that "only the very small class of rural criminal defense lawyers living in prison counties is bearing the burden of Texas'[s] failure to adequately fund indigent inmate defense."

Intervenors argued that the payment system for non-SCFO counsel requires appointed counsel to undertake representation without adequate, timely compensation and is therefore unconstitutional as a taking, a violation of the equal protection clause, and a violation of a defendant's right to effective counsel. At the conclusion of the hearing, Respondent denied SCFO's motion to reconsider his prior order denying SCFO's motion to withdraw. Respondent also found Director Vernon in contempt for her "open court admissions" that she had taken no steps to erect a Chinese Wall as required by Respondent's prior order. Respondent sentenced Director Vernon to three days in the Houston County Jail, probated until May 6, 2005 at 1:00 p.m., which was the time set for Wingfield's arraignment. On April 6, Respondent signed an order incorporating his rulings on SCFO's motions and Director Vernon's contempt. Respondent made a finding in the order that appointing non-SCFO counsel to represent an indigent inmate defendant where the anticipated reasonable fee would equal or exceed $25,000 would be an appointment without a reasonable expectation of payment.[2] Respondent further concluded that appointment without a reasonable expectation of payment violates appointed counsel's "constitutional privilege against unreasonable taking."[3] This original proceeding followed. We granted SCFO's motion for emergency relief pending our disposition on the merits.

### AVAILABILITY OF MANDAMUS

 Mandamus relief is appropriate if the relator demonstrates that the act sought to be compelled is purely "ministerial" and that the relator has no other adequate legal remedy. *State ex rel. Rosenthal v. Poe*, 98 S.W.3d 194, 198 (Tex. Crim.App.2003). For a duty to be ministerial, the law must "clearly spell [ ] out the duty to be performed ... with such certainty that nothing is left to the exercise of discretion or judgment." *State ex rel. Hill v. Court of Appeals for the Fifth District*, 34 S.W.3d 924, 928 (Tex.Crim.App.2001) (quoting *Texas Dep't of Corrections v. Dalehite*, 623 S.W.2d 420, 424 (Tex.Crim. App.1981)). In other words, the act must be "positively commanded and so plainly prescribed" under the law "as to be free from doubt." *State ex rel. Hill*, 34 S.W.3d at 928 (quoting *Buntion v. Harmon*, 827 S.W.2d 945, 949 (Tex.Crim.App.1992)).

 The "ministerial act" requirement has also been described as a requirement that the relator have "a clear right to the relief sought." *State ex rel. Hill*, 34 S.W.3d at 928. This means that the relief sought must be clear and undisputable. *State ex rel. Rosenthal*, 98 S.W.3d at 198.

**2.** During the hearing, Respondent expressed doubt that the Legislature would approve payment of these claims.

**3.** On June 20, 2005, Respondent notified this Court by letter that the appropriations bill for the upcoming biennium (fiscal years 2006–07) provides additional funding for the payment of miscellaneous claims, but the $25,000 statutory cap remains. Respondent also reiterated his conclusion that "it is only in cases likely to hit the $25,000 statutory cap where free world counsel does not have a reasonable expectation of payment and thus constitutional takings concerns override."

Thus, its merits must be beyond dispute with nothing left to the exercise of discretion or judgment. *Id.* If there is any discretion or judicial determination attendant to the act, it is not ministerial, nor is it a ministerial act if the trial court must weigh conflicting claims or collateral matters that require legal resolution. *State ex rel. Hill v. Court of Appeals for the Fifth District,* 67 S.W.3d 177, 181 (Tex.Crim. App.2001). Mandamus may be used to correct judicial action that is contrary to well-settled law, whether the law is derived from statute, rule, or clear, binding precedent from a court of superior jurisdiction. *See State ex rel. Healey v. McMeans,* 884 S.W.2d 772, 774 (Tex.Crim.App. 1994).

### DENIAL OF MOTION TO WITHDRAW

█ Relators first argue that Respondent had a ministerial duty to appoint a non-SCFO attorney to represent Wingfield. *See* TEX.CODE CRIM. PROC. ANN. art. 26.051(g). Relators further contend that they have no adequate remedy at law to challenge Respondent's denial of SCFO's motion to withdraw and, therefore, mandamus is appropriate. Withdrawal of counsel is a proper subject of mandamus. *Haley v. Boles,* 824 S.W.2d 796, 798 (Tex. App.-Tyler 1992, orig. proceeding). Consequently, we must address only whether Relator had a ministerial duty to appoint non-SCFO counsel for Wingfield.

Article 26.051(g) provides as follows:

The court *shall* appoint an attorney other than an attorney provided by the [Texas Board of Criminal Justice] if the court determines *for any of the following reasons* that a conflict of interest *could* arise from the use of an attorney provided by the board [for an inmate who is charged with an offense committed while in the custody of the Texas Department of Criminal Justice]:

(1) the case involves more than one inmate and the representation of more than one inmate *could* impair the attorney's effectiveness;

(2) the case is appealed and the court is satisfied that conflict of interest would prevent the presentation of a good faith allegation of ineffective assistance of counsel by a trial attorney provided by the board; *or*

(3) *any conflict exists* under the Texas Disciplinary Rules of Professional Conduct of the State Bar of Texas that precludes representation by an attorney appointed by the board.

TEX.CODE CRIM. PROC. ANN. art. 26.051(g) (emphasis added). The plain language of the statute requires the trial court to appoint non-SCFO counsel if at least one of the three criteria is met. No exceptions are stated. Thus, the act of appointing non-SCFO counsel becomes ministerial once SCFO makes the required showing.

In its motion to withdraw, SCFO alleged that Wingfield's interest in the defense of the respective charges differed from the interest of his codefendant. For that reason, SCFO alleged, its judgment in behalf of codefendant Collins is likely to adversely affect its representation of Wingfield, which necessitated its withdrawal from the representation. *See Almanzar v. State,* 702 S.W.2d 653, 655 (Tex.Crim.App.1986) ("We wish to stress how vital it is for a defense attorney not to become entangled in a web of conflicting interests between two or more defendants."). The December 15, 2004 order provides in pertinent part as follows:

5. The creation of a "Chinese Wall" is an adequate remedy at law, in lieu of withdrawal which is equally convenient, beneficial and effective. The creation of a "Chinese Wall" will both satisfy the professional requirements of independent representation

and assure legal counsel for inmate defendants.

6. The Court has a duty to protect a defendant's right to due process of law under both the United States and Texas Constitutions. These constitutional considerations override the inconvenience to State Counsel for Offenders in the creation of a "Chinese Wall" to prevent the anticipated conflicts in representation of multiple defendants.

7. Through the creation of a "Chinese Wall" between defense counsels the preservation of the secrets and confidences of respective defendant clients as well as the independent professional judgment of defense counsel may be maintained.

It is therefore Ordered that State Counsel for Offenders take all reasonable steps to create a "Chinese Wall" to protect the confidentiality, secrets, and work product and independent professional judgment of separate defense counsel within the State Counsel for Offenders as they discharge their statutory obligation of representation.

These findings indicate Respondent recognized that a conflict could arise from SCFO's dual representation of Wingfield and Collins and that the conflict could impair defense counsel's effectiveness.[4] As such, the statutory prerequisites for appointment of non-SCFO counsel were satisfied. *See* TEX.CRIM. PROC. ANN. art. 26.051(g)(1). However, that is not the end of the matter.

---

**4.** In this proceeding, Respondent states that "[t]he use of dual representation by the State Counsel even with a Chinese Wall admittedly raises legitimate conflicted representation concerns."

**5.** As an aside, we perceive no conflict between the two statutes. Article 26.051(g) prescribes the circumstances under which non-

## DENIAL OF MOTION TO STRIKE PLEA IN INTERVENTION

Respondent contends that in making his ruling, he was required to balance the interest asserted by Intervenors and Wingfield's right to conflict-free representation, which, in turn, necessitated resolution of the conflict between Code of Criminal Procedure article 26.051(g) and Government Code section 403.074.[5]

In response to Relators' mandamus petition, Respondent contends that "[t]he appointment of private counsel without reliable compensation raises takings and equal protection violations for the attorney and adequate representation issues for the defendant." Consequently, Respondent argues, a "constitutional conundrum" exists and he "made the most palatable decision possible under the difficult circumstances not of the judiciary's making." Relators, on the other hand, contend that no provision or precedent exists in Texas criminal law for pleas in intervention. Therefore, Relators contend, Respondent should have granted SCFO's motion to strike.

■ Intervention in civil actions has long been permitted in Texas. *See Legg v. McNeill,* 2 Tex. 428, 430–31 (Tex.1847). In approving the practice, the Texas Supreme Court reasoned that "[h]aving in our system but one form of action, we cannot perceive how the interest of parties not embraced in the suit can always be protected without allowing them to come in as intervenors...." *Id.* at 430. The current rule permits any party to inter-

SCFO counsel must be appointed for indigent inmate offenders, and section 403.074 creates a payment system for those appointed. The real issue, as presented by Intervenors at the evidentiary hearing and as argued by Intervenors and Respondent in this proceeding, is the constitutionality of the payment system.

vene by filing a pleading, subject to being stricken out by the court for sufficient cause on the motion of any party. *See* TEX.R. CIV. P. 60. However, Rule 60 applies to civil cases only. *See* TEX.R. CIV. P. 2 (Texas Rules of Civil Procedure govern the procedure in all actions of a civil nature.); *see also Holloway v. State*, 147 Tex.Crim. 106, 108, 178 S.W.2d 688, 689 (Tex.1944) (rules governing civil actions are applicable and controlling in criminal matters only when expressly made so by statute).[6]

■ Criminal proceedings are governed by the Texas Code of Criminal Procedure. TEX.CODE CRIM. PROC. ANN. art. 1.02 (Vernon 2005). A "criminal action," such as the underlying proceeding, is prosecuted in the name of the State of Texas against the accused and is conducted by some person acting under the authority of the State, in accordance with its laws. TEX.CODE CRIM. PROC. ANN. art. 3.02 (Vernon 2005). Unlike the Rules of Civil Procedure, the Code of Criminal Procedure makes no provision for a third party to intervene in a "criminal action." In his response to Relators' petition, Respondent does not cite authority permitting intervention in a criminal action. Intervenors rely on Rule 60, but admit that "there may be some question whether an intervention per se is permitted in criminal matters, in the absence of specific authority to do so under the Code of Criminal Procedure." We have been unable to locate any authority that Rule 60 is an exception to the general rule that the Texas Rules of Civil Procedure are controlling in criminal matters only when expressly made so by statute. *See Holloway*, 147 Tex.Crim. at 108, 178 S.W.2d at 689.

■ Additionally, we note that the April 6 order includes findings that Intervenors "had an interest in the issue before the Court, sufficient for them to intervene" and that the intervention was "in the nature of an amicus curie [sic]." A true amicus curiae is without interest in the proceeding in which he appears. *Burger v. Burger*, 156 Tex. 584, 298 S.W.2d 119, 120–21 (Tex.1957). He is a "bystander" whose mission is to aid the court to act only for the personal benefit of the court. *Id.* Neither Respondent nor Intervenors have cited any authority permitting one claiming an interest in a proceeding to appear in the proceeding as amicus curiae, and we have been unable to locate any such authority.

■ Based upon the foregoing authority and the absence of contrary authority, we agree with Relators that Respondent had no discretion to deny SCFO's motion to strike the plea in intervention. It therefore follows that if Respondent had no discretion to deny SCFO's motion to strike, he had no discretion to consider the issues raised by Intervenors. Because SCFO satisfied the statutory prerequisites, Respondent had a ministerial duty to grant SCFO's motion to withdraw and appoint non-SCFO counsel.

### CONTEMPT ORDER

■ An order of contempt is not appealable. *Ex parte Gray*, 649 S.W.2d 640, 642 (Tex.Crim.App.1983). Generally, if the contemnor has not been confined, she has no other adequate remedy at law but mandamus. *Id.* However, as an officer of the court, an attorney has a right, upon proper motion filed in the offended court,

---

6. An exception is Texas Rule of Civil Procedure 18a relating to the recusal of judges. *See Arnold v. State*, 853 S.W.2d 543, 544 (Tex.Crim.App.1993) (holding that Rule 18a, formerly codified in Tex.Rev.Civ. Stat. Ann. art. 200a, § 6 but repealed by Act of June 12, 1985, 69th Leg., R.S., ch 480, § 26(1), 1985 Gen. Laws 2048, applies in criminal cases).

to be released on her own personal recognizance pending a *de novo* determination of her guilt or innocence by a judge other than the judge of the offended court. *See* Tex. Gov't Code Ann. § 21.002(d) (Vernon 2004); *Ex parte Waters*, 499 S.W.2d 309, 310–11 (Tex.Crim.App.1973). Once a finding of contempt has been entered and an attorney has filed a motion for referral, the trial court has a ministerial duty to refer the contempt proceeding to the presiding judge of the administrative judicial region in which the alleged contempt occurred for assignment of a judge to re-adjudicate the issues of guilt or innocence and punishment. Tex. Gov't Ann.Code Ann. § 21.002(d); *see Ex parte Howell*, 488 S.W.2d 123, 126 (Tex.Crim.App.1972). Therefore, Director Vernon has an adequate remedy at law for the contempt order, and her request for mandamus relief is premature. *See Ex parte Waters*, 499 S.W.2d at 311.

### Conclusion

Relators' petition, the various responses, and the supporting record identify the legal issues and resulting dilemma in rural prison counties when SCFO, because of a potential or an actual conflict of interest, must withdraw from representing an indigent inmate accused of committing an offense while incarcerated. We are not unsympathetic to the situation. However, our charge is to determine whether the acts Relators seek to compel are ministerial and whether Relators have an adequate legal remedy. *State ex rel. Rosenthal*, 98 S.W.3d at 198.

We have concluded that Respondent had a ministerial duty to grant SCFO's motion to withdraw and appoint non-SCFO counsel to represent Wingfield. Therefore, Respondent had no discretion to order the creation of a Chinese Wall in lieu of the withdrawal mandated by article 26.051(g). We have also concluded that Respondent had no discretion to deny SCFO's motion to strike Intervenors' plea in intervention. Moreover, Wingfield and SCFO have no adequate remedy at law. *See Haley*, 824 S.W.2d at 798. However, Director Vernon has an adequate remedy at law for challenging the contempt order.

We conditionally grant the writ of mandamus as to (1) those portions of the April 6 order overruling SCFO's motion to reconsider Respondent's denial of SCFO's motion to withdraw and overruling SCFO's motion to strike Intervenors' plea in intervention and as to (2) the portion of the December 15, 2004 order requiring the creation of a Chinese Wall. We are confident that on or before fifteen days from the date of this opinion and corresponding order, Respondent will vacate these provisions of the respective orders and enter an order granting SCFO's motion for reconsideration of its motion to withdraw and granting SCFO's motion to strike the plea in intervention. The writ will issue only if he does not. Because Director Vernon has an adequate remedy at law, she has not shown herself entitled to mandamus relief. Therefore, we deny the writ as to the contempt portion of the April 6 order.

The stay of May 2, 2005 is lifted.