

IN THE
TENTH COURT OF APPEALS

No. 10-07-00361-CV

GORDON R. SIMMONDS,

                                                            Appellant

v.

TDCJ, ET AL.,

                                                            Appellee

From the 12th District Court
Madison County, Texas
Trial Court No. 23516

## MEMORANDUM OPINION

Gordon Simmonds, a state prison inmate, appeals the trial court's frivolousness dismissal of his suit against the Texas Department of Criminal Justice—Institutional Division (the TDCJ) and several TDCJ officials or employees: Captain Kenneth N. Simmons, Warden Charles T. O'Reilly, Lieutenant Bob K. Castleberry, Investigator David P. McLeod, and Grievance Investigator Tawn Roddey.

### Factual Background and Allegations

Simmonds's claims center around the alleged wrongful confiscation of his

personal property by TDCJ employees. He alleged in his second amended petition that on March 15, 2006, during a semi-annual and unit-wide "shakedown" at the Huntsville Unit, Simmons and Castleberry confiscated (1) Simmonds's typewriter because it contained contraband and (2) numerous personal items belonging to Simmonds because they allegedly were excessive property.

Simmons and Castleberry seized the typewriter because Simmonds had stored inside it a bottle of "white-out" correction fluid and "scotch" tape, both of which are contraband (which Simmonds does not dispute). Simmonds alleged that no TDCJ rule allowed for the typewriter's seizure and that its seizure without such a rule and without disciplinary action being brought against him violates due process.

As for Simmonds's other personal property, Simmonds alleged that the sizing bin that TDCJ uses in a shakedown measures two cubic feet, which is the amount of personal property that inmates may possess. Simmonds had a cell storage bin—a "footlocker"—that measured three cubic feet, and his legal materials took up two-thirds (two cubic feet) of his footlocker. All of Simmonds's nonlegal, personal property would fit in the one cubic foot of remaining space in his footlocker. Simmonds also had personal hygiene items (his "shelf" items) that TDCJ rules allow to be stored on a cell shelf; they did not have to be stored in the footlocker, but they too would have fit in the remaining one cubic foot of space.

In September of 2005, in anticipation of the next shakedown, Simmonds inquired of McLeod if Simmonds needed to obtain an extra storage container for the extra one cubic foot of legal materials that he would need available so that his other cubic foot of

legal materials and one cubic foot of personal property would fit in the two-cubic-feet TDCJ sizing bin.[1]  McLeod told Simmonds that he would not be issued an additional container for his legal materials because all of Simmonds's property, other than his shelf items, would fit in Simmonds's footlocker.  Simmonds also asked, and was told by McLeod, that in a shakedown, Simmonds would not have to put his legal materials in the sizing bin.

Simmonds alleged that in the March 15, 2006 shakedown, the inmates were required to take all of their personal property to a gym for inspection and measuring. Simmonds had all of his personal property that would have to fit in the sizing bin in a red mesh bag.  All of his shelf items were in a pillow case so they could be set aside and not placed in the sizing bin, and all of his legal materials were in two red mesh bags so that they too could be set aside.  Simmons and Castleberry required Simmonds to place all of his property in the sizing bin, and because Simmonds's legal materials were most important to him, he put those in first.  After the sizing bin had been filled with Simmonds's legal materials, all of Simmonds's other personal property,[2] including his shelf items and his Bible, which Simmonds alleged was exempt from having to fit in his footlocker, were confiscated as excessive property.  When Simmonds told Simmons and Castleberry that the shelf items were not required to be stored in his footlocker and should not go in the sizing bin, he was asked, "Do you see any shelves in here [*i.e.*, in

---

[1] It is unclear from the record whether Simmonds formally requested another storage container.

[2] Simmonds's shelf items consisted of items such as deodorant, shampoo, and nail clippers, and his other personal property consisted of miscellaneous items such as a dictionary, pens, a bowl, typewriter ribbon cassettes and printing wheels, and an electric razor (which Simmonds says the rules do not require being stored in the footlocker container).  He valued the confiscated personal property at $438.20.

the gym]?"

Simmonds further alleged that he had filed a suit in February 2006 against TDCJ officials and that the property confiscation that occurred a month later was in retaliation for this new suit and is thus actionable under 42 U.S.C. § 1997d. Simmonds also alleged that, before the next shakedown, he received a yellow mesh bag for his legal materials, and it was explained to him that the legal materials that he placed in the yellow mesh bag would not have to be placed in the sizing bin. In that next shakedown, Simmonds said that he did not have to place his legal materials in the sizing bin, nor did he have to place his shelf items in the sizing bin. Simmonds asserted that this occasion was an admission that the prior confiscation of his property was unlawful.

O'Reilly, the Warden, signed Simmonds's Step 1 Grievance relating to the confiscation, and Roddey, a grievance investigator, signed his Step 2 Grievance.

**Procedural Background**

Simmonds filed the instant lawsuit *pro se*, along with his pauper's affidavit with inmate account statement, affidavit relating to previous filings, affidavit relating to exhaustion of administrative remedies, and affidavit relating to the value of confiscated items. The district clerk issued a bill of costs for the $207 filing fee, and the trial court entered an order pursuant to section 14.006 of the Civil Practice and Remedies Code ordering payment of those costs from Simmonds's inmate account.

The trial court also entered an order directing the clerk to forward all of Simmonds's filings to the Attorney General's Law Enforcement Defense Division and directed the Attorney General to review the filings and, as *amicus curiae*, advise the trial

court if Simmonds's filings complied with chapter 14 of the Civil Practice and Remedies Code. The Attorney General filed a reply as *amicus curiae* and, other than asserting that Simmonds's claims were frivolous, did not note any noncompliance with Simmonds's filings. The Attorney General then filed an answer for all the defendants.

The defendants filed a motion to dismiss under chapter 14, alleging that Simmonds's suit was frivolous. An amended motion was filed, and attached were unauthenticated copies of TDCJ offender property rules and excerpts from the offender orientation handbook. The trial court held a hearing on the amended motion, granted it, and entered an order dismissing the action as frivolous under chapter 14. Simmonds appeals, asserting eight issues in his original brief and an additional issue in a supplemental brief that he was given leave to file.

### Chapter 14 Frivolousness Dismissal

In his first issue, Simmonds asserts that the trial court erred in dismissing his action as frivolous under chapter 14.

> Section 14.003 allows a trial court to dismiss a suit filed by an indigent inmate, either before or after service of process, if the court finds that the claim is frivolous or malicious. TEX. CIV. PRAC. & REM. CODE ANN. § 14.003(a)(2). In determining whether the claim is frivolous or malicious, the trial court may consider whether (1) the claim's realistic chance of ultimate success is slight; (2) the claim has no arguable basis in law or in fact; (3) it is clear that the party cannot prove facts in support of the claim; or (4) the claim is substantially similar to a previous claim filed by the inmate because the claim arises from the same operative facts. *Id.* § 14.003(b).
>
> . . .
>
> The Texas Supreme Court has expressed doubt about whether a trial court can properly dismiss a suit only because the claim's realistic chance of ultimate success is slight or because it is clear that the party cannot prove facts in support of the claim. *Johnson v.*

> *Lynaugh,* 796 S.W.2d 705, 706-07 (Tex. 1990). Practically speaking, therefore, the trial court is limited to determining whether the claim has an arguable basis in law or fact. *Bohannan v. Texas Bd. of Criminal Justice,* 942 S.W.2d 113, 115 (Tex. App.—Austin 1997, writ denied).

> *Smith,* 33 S.W.3d at 340; *see also Spurlock,* 88 S.W.3d at 736.
>
> …
>
> The issue of whether there was an arguable basis in law is a legal question that we review de novo. *Id.*; *Moreland v. Johnson,* 95 S.W.3d 392, 394 (Tex. App.—Houston [1st Dist.] 2002, no pet.).

> To determine whether the trial court properly decided there was no arguable basis in law … , we examine the types of relief and causes of action … to determine whether, as a matter of law, the petition stated a cause of action that would authorize relief. *Johns,* 2005 WL 428465, at *1; *Spurlock,* 88 S.W.3d at 736. We review and evaluate pro se pleadings by standards less stringent than those applied to formal pleadings drafted by lawyers. *Spurlock,* 88 S.W.3d at 736 (citing *Thomas v. Collins,* 860 S.W.2d 500, 503 (Tex. App.—Houston [1st Dist.] 1993, writ denied)). Also, in reviewing the dismissal …, we are bound to take as true the allegations in his petition. *Jackson v. Tex. Dep't Crim. Justice-Inst. Div.,* 28 S.W.3d 811, 813 (Tex. App.—Corpus Christi 2000, pet. denied).

*Brewer v. Simental,* 268 S.W.3d 763, 769-70 (Tex. App.—Waco 2008, no pet.). A claim has no arguable basis in law if it is an indisputably meritless legal theory. *Leachman v. Dretke,* 261 S.W.3d 297, 304 (Tex. App.—Fort Worth 2008, no pet.).

We find no case law on what it means for a claim to have "no arguable basis in fact" under subsection 14.003(b)(2).[3] We thus turn to case law under Rule 13, which

---

[3] The amended motion to dismiss sought dismissal of Simmonds's action because none of his claims have an arguable basis in fact or law. The trial court's dismissal order does not state the frivolousness reason (*i.e.,* no arguable basis in fact, or no arguable basis in law) for its dismissal. The trial court held a hearing in which Simmonds was present. The Assistant Attorney General argued the amended motion to dismiss for the defendants. Simmonds argued against dismissal and factually explained his claims and answered a few questions from the trial court, but he was not sworn in and did not formally testify, nor was he cross-examined by the defendants' attorney. Also present at the hearing for the defendants was John Patrick, a TDCJ supervisor. Patrick spoke in the hearing and answered questions from the trial court, but he too was not sworn in and did not formally testify, nor was he cross-examined by Simmonds. Despite the unsworn, informal testimony, we find that the trial court conducted a fact hearing on the amended motion to dismiss.

authorizes a trial court to impose sanctions against an attorney, a represented party, or both, who file a groundless pleading brought in bad faith or brought for the purpose of harassment. TEX. R. CIV. P. 13. Rule 13 defines "groundless" as having "no basis in law or fact and not warranted by good faith argument for the extension, modification, or reversal of existing law." *Id.* In that inquiry, the trial court must examine the facts available to the litigant and the circumstances existing when the litigant filed the pleading. *Alejandro v. Bell*, 84 S.W.3d 383, 392 (Tex. App.—Corpus Christi 2002, no pet.). The trial court uses an objective standard to determine if a pleading was groundless: did the party and counsel make a reasonable inquiry into the legal and factual basis of the claim? *In re United Servs. Auto Ass'n*, 76 S.W.3d 112, 115 (Tex. App.—San Antonio 2002, orig. proceeding). We review Rule 13 groundlessness for abuse of discretion. *See Cire v. Cummings*, 134 S.W.3d 835, 838 (Tex. 2004). A clear failure by the trial court to analyze or apply the law correctly is an abuse of discretion. *Leachman*, 261 S.W.3d at 304.

Simmonds's live pleading alleged the following causes of action against TDCJ: a claim under the Texas Tort Claims Act and a request for indemnification under subsection 104.002(a)(2) of the Civil Practice & Remedies Code for his claims against the individual defendants. Simmonds alleged the following causes of action against the individual defendants: fraud (and statute of frauds); detinue; conversion; fraudulent

---

After the hearing, Simmonds filed an objection to Patrick's unsworn testimony. In issue eight, Simmonds complains that the trial court should not have allowed Patrick's unsworn testimony and that we should not consider it in this appeal. Simmonds's objection was untimely, and it was apparent that Patrick was presenting evidence. *See* TEX. R. APP. P. 33.1(a); *Banda v. Garcia*, 955 S.W.2d 270, 272 (Tex. 1997) (opponent of testimony can waive oath requirement by failing to object when opponent knows or should know that objection is necessary). We overrule issue eight.

conversion; trespass to chattels; trespass to personal property; conspiracy; replevin; violation of Texas Theft Liability Act; and violations of 42 U.S.C. §§ 1983 and 1997d.

*Texas Tort Claims Act*: Simmonds asserts a claim against the TDCJ under the Texas Tort Claims Act, alleging that he has suffered personal injury (pain and suffering from having to handwrite with arthritic hand and fingers) as a result of Simmons and Castleberry's confiscation of his typewriter ribbons and printing wheels through the use of the sizing bin, which is tangible personal property. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2) (Vernon 2005) ("A governmental unit in this state is liable for: … personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.").

From Simmonds's pleadings and brief, it is clear that he alleges an intentional tort by Simmons and Castleberry in the confiscation of these items.[4] One of the Act's exceptions from its limited waiver of immunity is the intentional-tort exception: the Act does not apply to a claim "arising out of assault, battery, false imprisonment, or any other intentional tort, … ." TEX. CIV. PRAC. & REM. CODE ANN. § 101.057(2) (Vernon 2005); *see City of Waco v. Williams,* 209 S.W.3d 216, 221-22 (Tex. App.—Waco 2006, pet. denied). Because the State has not waived sovereign immunity as to Simmonds's claim under the Texas Tort Claims Act, that claim has no arguable basis in law or in fact, and the trial court did not err or abuse its discretion in dismissing it as frivolous.

---

[4] "The proximate cause of Mr. Simmonds' injury arises through and under his claim that Appellees had perpetrated a fraud, and it was through the use of both bins that the fraud was completed … ." (Simmonds Brief at 8).

*Indemnification under subsection 104.002(a)(2)*:  Simmonds seeks recovery of his section 1983 damages under subsection 104.002(a)(2), which provides for the State's indemnification of *State employees and contractors* identified in section 104.001 who have had damages assessed against them.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 104.001 (Vernon Supp. 2009), § 104.002 (Vernon 2005).  Simmonds is not a person who is entitled to such indemnification; *i.e.*, chapter 104 is not a vehicle for Simmonds to recover damages.  *See id.*; *Montana v. Patterson,* 894 S.W.2d 812, 815 (Tex. App.—Tyler 1994, no writ).  Because Simmonds cannot recover damages under subsection 104.002(a)(2), his theory of relief under it has no arguable basis in law or in fact, and the trial court did not err or abuse its discretion in dismissing it as frivolous.

*Fraud*:  Simmonds claims that McLeod committed fraud[5] by misrepresenting to him that he would not have to put his legal materials in the sizing bin and that he thus did not need another storage container in his cell.  The elements of fraud are:  (1) a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act on it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury.  *Long v. Tanner,* 170 S.W.3d 752, 754 (Tex. App.—Waco 2005, pet. denied).  Simmonds's petition and brief indicate that he had no choice regarding McLeod's (or Simmons and

---

[5] Simmonds's petition mentions the "statute of frauds," an established affirmative defense (*see* TEX. R. CIV. P. 94; TEX. BUS. & COMM. CODE ANN. § 26.01 (Vernon 2009)), in the litany of his causes of action.  To the extent he asserts a cause of action under the statute of frauds, it has no arguable basis in law or in fact, and the trial court did not err in finding it to be frivolous.

Castleberry's)[6] representations about Simmonds's property and whether he needed or could have another container, so we agree with the State that he cannot establish that he acted in reliance on any possible misrepresentation. His fraud claim has no arguable basis in law or in fact, and the trial court did not err or abuse its discretion in dismissing it as frivolous.

Simmonds asserts that O'Reilly and Roddey are liable for fraud because they were notified of McLeod's allegedly fraudulent conduct in the grievance process and did nothing to correct the harm. Simmonds does not plead or show that they can be liable to him for fraud in failing to correct the alleged fraud and harm. Thus, his assertion has no arguable basis in law or in fact as a fraud claim, and the trial court did not err or abuse its discretion in dismissing it as frivolous.

*Conspiracy*: Simmonds claims that all of the individual defendants conspired to unlawfully confiscate his property or to defraud him of his property. It is undisputed that all of these individuals, except Roddey, were TDCJ employees or officials at the Huntsville Unit. Because they were employees or officials of the same unit at the time of the alleged conspiratorial acts, they were members of the same collective entity and could not have conspired with each other as a matter of law. *See Brewer*, 268 S.W.3d at 773-74. As for Roddey and her role in the alleged conspiracy, Simmonds has not pleaded any facts (he has only made conclusory allegations that she acted with the others in refusing to deal with the unlawful confiscation and to return Simmonds's

---

[6] Simmonds's brief explains that Simmons and Castleberry's fraud liability occurs because of their participation in a conspiracy to defraud him of his property because they did not handle his legal materials in the way that McLeod said they would. The disposition of that aspect of his fraud claim is included with our disposition of his conspiracy claim.

property).  Simmonds has failed to allege sufficient facts to support a conspiracy claim involving Roddey.  *See Leachman*, 261 S.W.3d at 314; *cf. Vacca v. Farrington*, 85 S.W.3d 438, 439-42 (Tex. App.—Texarkana 2002, no pet.).  The conspiracy claim has no arguable basis in law or in fact, and the trial court did not err or abuse its discretion in dismissing it as frivolous.

*Conversion*:  Simmonds alleges that all the individual defendants converted his personal property.

> To establish conversion of personal property, a plaintiff must prove that: (1) the plaintiff owned or had legal possession of the property or entitlement to possession; (2) the defendant unlawfully and without authorization assumed and exercised dominion and control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner; and (3) the plaintiff suffered injury.  *United Mobile Networks, L.P. v. Deaton*, 939 S.W.2d 146, 147-48 (Tex. 1997); *Apple Imports, Inc. v. Koole*, 945 S.W.2d 895, 899 (Tex. App.—Austin 1997, pet. denied).  If the defendant originally acquired possession of the plaintiff's property legally, the plaintiff must establish that the defendant refused to return the property after the plaintiff demanded its return.  *Presley v. Cooper*, 284 S.W.2d 138, 141 (Tex. 1955); *Apple Imports*, 945 S.W.2d at 899.

*Lopez v. Lopez,* 271 S.W.3d 780, 784 (Tex. App.—Waco 2008, no pet.); *see Mitchell v. Tex. Dep't Crim. Just.*, No. 06-04-00130-CV, 2005 WL 486389, at *2 (Tex. App.—Texarkana Mar. 3, 2005, no pet.).

Simmonds alleges that Simmons and Castleberry wrongfully confiscated, and thus converted, his personal property in the shakedown.  He alleges that O'Reilly, McLeod, and Roddey are liable for conversion because they refused his demands to return his personal property.  Simmonds makes no legal or factual showing that McLeod and Roddey, who are investigators, have the power or duty to return

wrongfully confiscated property. Accordingly, his conversion claim against McLeod and Roddey has no arguable basis in law or in fact, and the trial court did not err in finding it to be frivolous. As for O'Reilly, we assume without deciding that a prison warden does have the power or duty to return wrongfully confiscated property, and to the extent that Simmonds's conversion claim is not frivolous, as discussed below, it is not frivolous as to O'Reilly. *See Mitchell,* 2005 WL 486389, at *2 (holding that inmate's conversion claim against warden was not frivolous).

Simmonds's confiscated property falls into three categories: (1) shelf items; (2) miscellaneous personal property; and (3) typewriter. We will address each category separately. Regarding the shelf items, Simmonds asserted that they were not required to be stored in his container and thus were not required to be placed in the sizing bin to determine if Simmonds had excess property. In the dismissal hearing, Patrick acknowledged to the trial court that the offender property rules do not require the shelf items to be placed in the sizing bin. Those rules state that "one (1) each of personal hygiene items may be stored on the shelf, if available" and except the shelf items from the requirement that "the total volume of an offender's property must be placed in the closable storage container." Also excepted are non-combustible items such as electrical appliances, and we agree with Simmonds that his confiscated electric razor falls within this exception.[7] Finally, Simmonds pleaded that in a subsequent shakedown, he was

---

[7] Simmonds also claims that his Bible was excepted from the property rules requirement that it must be stored in his container, but he does not cite a specific rule, nor do the defendants address it. While we find that the rules and offender orientation handbook allow an offender to possess one religious text, we do not find that its storage is addressed in either document. In any event, his Bible's confiscation also falls within the category of miscellaneous personal property, which we address next.

not required to place his shelf items in the sizing bin. We find that Simmonds's claim for conversion of his shelf items has an arguable basis in law and in fact, and the trial court erred or abused its discretion in concluding otherwise.

Regarding Simmonds's miscellaneous personal property that was confiscated because Simmond's legal materials completely filled the sizing bin in the shakedown, the rules provide that an offender can request and is entitled to receive an additional storage container for his legal materials if his first container is totally filled with legal materials and a "reasonable amount" of other personal property items, with a reasonable amount defined as not exceeding one-half of the available space in the first container. Simmonds asserted in his petition and in the hearing that his personal property took up one-third of the space in his container and his legal materials took up two-thirds of the space. Legal materials are treated separately in the property rules, and nothing in the rules includes legal materials as part of an offender's allowed two cubic feet of personal property, which of course is explainable because offenders can be entitled to additional storage for their legal materials. Furthermore, Simmonds pleaded that in a subsequent shakedown, he was not required to place his legal materials in the sizing bin. We find that Simmonds's claim for conversion of his miscellaneous personal property has an arguable basis in law and in fact, and the trial court erred or abused its discretion in concluding otherwise.

Simmonds's typewriter was confiscated because Simmonds had placed contraband ("white-out" correction fluid and "scotch" tape) in it. Simmonds concedes that those items were contraband and were properly confiscated, but he claims that no

rule allowed for the typewriter's confiscation. He says that he placed the contraband in the typewriter not to hide it, but to store it in the most sensible place for it because he only used the white-out when he typed.

The property rules state that contraband is to be confiscated and defines contraband as "altered, out-of-place, or excesses of authorized property; and any item which an offender is prohibited to possess or obtain while in custody, unless received by the offender as the result of a State or Federal court order or legitimately through the litigation process." Contraband is also defined in the handbook as any "item used to violate a TDCJ rule."

The defendants argue that the typewriter was properly confiscated as contraband, and thus was not converted, because Simmonds used it to hide contraband and it thus was an item used to violate a TDCJ rule. This argument is akin to Texas forfeiture law, which provides for the forfeiture of contraband, which generally means property "used in the commission" or "used or intended to be used in the commission" of various enumerated felonies. *See* TEX. CODE CRIM. PROC. ANN. art. 59.01(2)(A, B) (Vernon Supp. 2009). However, we cannot agree at this point with the defendants' argument because the handbook's definition is not unambiguous and we cannot say as a matter of law that the typewriter was an item "used to violate a TDCJ rule."[8] Moreover, Simmonds's factual explanation for why the contraband was in his

---

[8] In his "omnibus reply" to the defendants' pleadings, Simmonds alleged that other inmates stored their whiteout in their typewriters, but in the shakedown, their typewriters were not seized.

typewriter gives his conversion claim an arguable basis in fact.[9]   We find that Simmonds's claim for conversion of his typewriter has an arguable basis in law and in fact, and the trial court erred or abused its discretion in concluding otherwise.

*Detinue, Trespass to Chattels, Trespass to Personal Property, Theft Liability Act, and Replevin*:  Based on the same facts as those for his conversion claim, Simmonds asserts common-law causes of action for detinue, trespass to chattels, trespass to personal property, and replevin, and a statutory claim under the Theft Liability Act.

> At common law when a defendant unlawfully detained property from a plaintiff, the plaintiff might sue him either in detinue or trover.  If he sued in detinue it was because he desired to recover his property together with damages for its unlawful detention.  If he sued in trover it was because he elected to treat the detention as a conversion of the property by defendant, whereby the title thereto passed to defendant as of the time of the conversion, and he recovered the value of the property at the time it was converted.

*Hankey v. Employer's Cas. Co.*, 176 S.W.2d 357, 360-61 (Tex. Civ. App.—Galveston 1943, no writ).

An action for trespass to chattels is similar to conversion but differs in the measure of damages recoverable.  O'CONNOR'S TEXAS CAUSES OF ACTION 159 (2008).  On a trespass to chattels claim, the plaintiff can recover only the diminished value of his property and the damage to his interest in its possession or use.  *Id.* (citing RESTATEMENT

---

[9] The handbook also defines contraband as an "item altered from its original condition."  The amended motion to dismiss argued that the typewriter was altered from its original condition to accommodate the contraband, but the defendants presented no evidence that is was altered, and Simmonds disputes that it was altered, stating that he merely placed the white-out and tape inside the typewriter.  Contraband is also defined in the handbook as items "stored in an unauthorized manner."  The motion also asserted that the typewriter was stored in an unauthorized manner, "as a means to hide contraband."  Simmonds disputes this argument too, arguing that the contraband was stored in the typewriter and that the typewriter itself was not improperly stored in his cell.  Simmonds thus presents an arguable basis in law and in fact for why these other arguments do not necessarily result in the typewriter being contraband.

(2D) OF TORTS § 222A comt. c)); *see Chair King, Inc. v. GTE Mobilnet of Houston, Inc.,* 135 S.W.3d 365, 395 (Tex. App.—Houston [14th Dist.]. 2004), *rev'd on other grounds,* 184 S.W.3d 707 (Tex. 2006). An action for trespass to personal property, or personalty, "is an unlawful injury to, or interference with, possession, with or without the exercise of physical force." *Jamison v. Nat'l Loan Investors, L.P.,* 4 S.W.3d 465, 469 n.2 (Tex. App.—Houston [1st Dist.] 1999, pet. denied).

A statutory civil action for theft of personal property exists, the difference with a conversion action being the defendant's intent to deprive the plaintiff of the property and additional damages. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 134.003(a), 134.005(a)(1) (Vernon 2005); TEX. PEN. CODE ANN. § 31.03(a), (b) (Vernon Supp. 2009). Conversion does not require proof of wrongful intent to deprive. O'CONNOR'S TEXAS CAUSES OF ACTION 871 (2008).

While Simmonds's claims for detinue, trespass to chattels, trespass to personal property, and theft liability are largely duplicative of his conversion claim, we find that they have an arguable basis in law and in fact for the same reasons as his conversion claim, and the trial court erred or abused its discretion in concluding otherwise.

Replevin is an "action for the repossession of personal property wrongfully taken or detained by the defendant, whereby the plaintiff gives security for and holds the property until the court decides who owns it." BLACK'S LAW DICTIONARY 1302 (7th ed. 1999); *see, e.g., Seureau v. Mudd,* 515 S.W.2d 746 (Tex. Civ. App.—Houston [14th Dist.] 1974, writ ref'd n.r.e.). While Simmonds appears to not have given security for the property whose return he seeks, he still could. Because we have held that Simmonds's

conversion-related claims are not frivolous, we hold that his action for replevin, while

not sustainable in the absence of Simmonds giving security, is not frivolous on its face,

and the trial court erred or abused its discretion in concluding otherwise.

*Section 1983*: Simmonds alleges a section 1983 action against the individual

defendants (O'Reilly, Roddey, Simmons, and Castleberry) in their individual capacities

for violating his right to due process in the confiscation of his typewriter by applying a

nonexistent property rule and by confiscating his typewriter as punishment in lieu of

charging him with a disciplinary case and having a disciplinary hearing relating to his

possession of the typewriter as contraband.[10]

> Section 1983 provides a cause of action and remedy when any "person" acting under color of state law deprives another of rights, privileges, or immunities protected by the U.S. Constitution or laws. *Gordon v. Scott*, 6 S.W.3d 365, 369 (Tex. App.—Beaumont 1999, pet. denied) (citing *Thomas*, 960 S.W.2d at 109). A section 1983 action will lie against state officials in their personal or individual capacities. *Id.*

*Brewer*, 268 S.W.3d at 770.

In their amended motion to dismiss and at the hearing, the defendants argued

that they followed TDCJ rules in confiscating Simmonds's property and that the

grievance system afforded him due process, noting the application of the

---

[10] Simmonds also asserts that Roddey "may" have violated his due process right by reviewing his Step 2 grievance when he was already suing her in a separate lawsuit. Simmonds provides no authority for this part of his section 1983 claim, and he also failed to exhaust his administrative remedies by filing a separate grievance over Roddey's alleged impropriety. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 14.005 (Vernon 2002); *Leachman v. Dretke*, 261 S.W.3d 297, 304, 308, 311 (Tex. App.—Fort Worth 2008, no pet.) (if inmate fails to exhaust administrative remedies, appellate court may affirm dismissal even if ground was not presented in motion to dismiss) (allegations of reprisals by TDCJ employees against inmates for filing grievances or lawsuits, or other inmate complaints about TDCJ employee actions, are subject to grievance procedure). For these reasons, the trial court did not err in dismissing this part of Simmonds's section 1983 claim.

*Parratt/Hudson*[11] doctrine.

> Under the *Parratt/Hudson* doctrine, "a deprivation of a constitutionally protected property interest caused by a state employee's random, unauthorized conduct does not give rise to a § 1983 procedural due process claim, unless the State fails to provide an adequate postdeprivation remedy." *Zinermon v. Burch,* 494 U.S. 113, 115, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). Conduct is not "random and unauthorized" for purposes of the *Parratt/Hudson* doctrine if the state "delegated to [the defendants] the power and authority to effect the very deprivation complained of." *Zinermon,* 494 U.S. at 138, 110 S.Ct. 975.

*Allen v. Thomas,* 388 F.3d 147, 149 (5th Cir. 2004). In *Allen*, the Fifth Circuit addressed a similar due process claim relating to the confiscation of an inmate's property and held that, because the items were confiscated under the authority of a prison administrative directive, the confiscation was not a random, unauthorized act by a state employee and that the *Parratt/Hudson* doctrine thus did not apply. *Id.* For the same reason, we hold that the *Parratt/Hudson* doctrine does not apply and that, based on the meager record before us, Simmonds's section 1983 claim against O'Reilly, Roddey, Simmons, and Castleberry has an arguable basis in law and in fact and should not have been dismissed as frivolous. *Cf. Allen v. Thomas*, No. H-02-3132, 2005 WL 2076033 (S.D. Tex. Aug. 26, 2005) (granting summary judgment on inmate's due process claim after discovery taken and with detailed analysis of evidence and law).

*Section 1997d*: Simmonds's brief does not address at all his claim for an alleged violation of 42 U.S.C. § 1997d. By not briefing it, Simmonds has waived any complaint about its dismissal by presenting nothing for review. *See Strange v. Continental Cas. Co.,*

---

[11] *Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled in part by Daniels v. Williams,* 474 U.S. 327, 328, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).

126 S.W.3d 676, 678 (Tex. App.—Dallas 2004, pet. denied); TEX. R. APP. P. 38.1 (g), (h).

In conclusion, except for Simmonds's conversion claim and related claims (detinue, replevin, trespass to personal property and to chattels, and statutory theft liability) and his section 1983 claim (except as to his additional claim against Roddey), the trial court did not abuse its discretion or err in dismissing Simmonds's claims as frivolous. We sustain in part and overrule in part Simmonds's first issue, and these claims will be remanded for further proceedings.

**Other Issues**

In his second issue, Simmonds claims that the trial court erred in refusing to file findings of fact and conclusions of law, despite Simmonds's request that was prematurely filed and thus deemed filed on the day of, but immediately after, the signing of the dismissal order. *See* TEX. R. CIV. P. 306c. Simmonds, however, did not file a notice of past-due findings and conclusions, and even if we were to agree that findings and conclusions were required, Simmonds has not preserved his right to complain about the trial court's failure to file findings and conclusions. *See* TEX. R. CIV. P. 297; *Gaxiola v. Garcia*, 169 S.W.3d 426, 429 (Tex. App.—El Paso 2005, no pet.). We overrule issue two.

In issue three, Simmonds asserts that the trial court erred by not acting on his motion to modify, correct, or reform the judgment. That motion, however, was overruled by operation of law. *See* TEX. R. CIV. P. 329b(c). Moreover, our disposition of issue one resolves Simmonds's complaint. Issue three is overruled.

Simmonds's fourth issue asserts that the trial court erred in sending him a notice

under subsections 14.007(a) and 14.011(a) that, because this case had been dismissed as frivolous, Simmonds could not file another claim until he paid the fees and costs assessed in this case. We addressed this issue in an original proceeding brought by Simmonds, holding in his favor that, because this appeal was pending, "subsection 14.011(a) does not allow a clerk or trial court to refuse to accept for filing another claim by an inmate until the inmate has exhausted or waived his appeal of the dismissal order at issue in the subsection 14.007(a)(2) finding." *In re Simmonds*, 271 S.W.3d 874, 883 (Tex. App.—Waco 2008, orig. proceeding). Accordingly, we overrule issue four.

As previously noted, the trial court directed the clerk to forward Simmonds's filings to the Attorney General's office and directed it to review the filings and, as *amicus curiae*, file "an advisory" with the trial court as to whether Simmonds's filings complied with chapter 14. The Attorney General's *amicus curiae* reply asserted that Simmonds's claims were frivolous, but did not note any chapter 14 noncompliance. The *amicus curiae* reply begins by stating that it is being filed by the Office of the Attorney General, as *amicus curiae*, but the attorney's signature block identifies the Attorney General and his listed assistants as attorneys for the defendants. Thereafter, the Attorney General's office appeared and answered as counsel for the defendants. After the filing of the *amicus curiae* reply, Simmonds filed a motion that included an objection to the reply's status as an *amicus curiae* filing.

In his fifth issue, Simmonds complains that the trial court abused its discretion in allowing the Attorney General's office to appear as *amicus curiae* when it represents the defendants in the same action and always represents the defendants in inmate litigation

against TDCJ officials and employees. We agree with Simmonds's assertion that the status of the Office of the Attorney General's reply was not that of a true *amicus curiae*,[12] but Simmonds did not seek relief in the trial court. On appeal, he seeks no relief for the reply's filing, nor can he show reversible error. *See* TEX. R. APP. P. 44.1. We thus overrule issue five.

In the same order requesting an *amicus curiae* advisory, the trial court requested the Attorney General to obtain authority to represent the defendants and answer on their behalf. If the Attorney General could not locate a defendant or secure a defendant's authorization, a statement or affidavit of the defendant's last known address was to be filed *ex parte* and under seal, subject to the plaintiff's motion to unseal for good cause. Not knowing the correct identity of defendant Captain Kenneth N. Simmons, Simmonds initially named Sergeant Kevin D. Simmons as a defendant. After Simmonds filed an amended petition that named Kenneth N. Simmons as the proper defendant and omitted Kevin D. Simmons as a defendant, the Attorney General filed a motion to dismiss Kevin D. Simmons (Kenneth's brother) as an improper party, which the trial court granted at the hearing on the amended motion to dismiss the suit as frivolous.[13]

---

[12] "A true amicus curiae is without interest in the proceeding in which he appears. *Burger v. Burger,* 156 Tex. 584, 298 S.W.2d 119, 120-21 (Tex. 1957). He is a 'bystander' whose mission is to aid the court to act only for the personal benefit of the court. *Id.*" *In re Wingfield,* 171 S.W.3d 374, 381 (Tex. App.—Tyler 2005, orig. proceeding).

[13] By Simmonds's naming Kenneth N. Simmons as a defendant in his amended petition, Kenneth N. Simmons was made a party. *See Reynolds v. Haws,* 741 S.W.2d 582, 588-89 (Tex. App.—Fort Worth 1987, writ denied). Simmonds's later motion to add Kenneth N. Simmons as a party was thus unnecessary. The omission of Kevin D. Simmons as a defendant in the amended petition effectively dismissed him as a

In a "motion requesting unsealing of affidavits," Simmonds alleged impropriety by the Assistant Attorney General who initially reviewed Simmonds's filings because that attorney should not have failed to immediately disclose that Simmonds had named the incorrect Simmons as a defendant. Simmonds requested the trial court to take appropriate action as to the attorney's alleged misconduct and also requested the trial court to unseal the statement or affidavit of defendants' last known addresses so that Simmonds could learn the identity of the attorney who filed it and how Kevin D. Simmons was identified.

Issue six asserts that the "trial court abused its discretion by not taking appropriate action when evidence had been presented establishing wrongdoing and misconduct" of the defendants' attorneys. Issue seven asserts that the trial court abused its discretion in failing to grant Simmonds's motion to unseal the affidavits. Simmonds, however, did not request and obtain a ruling denying this motion, and he therefore failed to preserve these complaints for appellate review. *See* TEX. R. APP. P. 33.1(a); *Hull v. Davis*, 211 S.W.3d 461, 466 (Tex. App.—Houston [14th Dist.] 2006, no pet.). We overrule issues six and seven.

Simmonds's supplemental issue, which the defendants did not respond to, asserts that the trial court erred by assessing costs against Simmonds for subpoena and service fees when there had not yet been a finding under section 14.007 and Simmonds

---

party. *See Woodruff v. Wright*, 51 S.W.3d 727, 731 (Tex. App.—Texarkana 2001, pet. denied). His motion to have him dismissed as an improper party thus was also unnecessary.

   At the frivolousness dismissal hearing, the defendants' attorney noted that Kenneth N. Simmons had been listed as a party but had not been served, and the trial court informed Simmonds that he needed to get him served. That was not accomplished.

had not yet had a previous action dismissed as frivolous. We noted this issue in Simmonds's mandamus proceeding. *See Simmonds*, 271 S.W.3d at 880 & n.4. Simmonds, however, did not raise this issue in the trial court and request and obtain a ruling on it. He has therefore failed to preserve his complaint for appellate review. *See* TEX. R. APP. P. 33.1(a). We overrule his supplemental issue.

In conclusion, having sustained in part Simmonds's first issue, we reverse in part the trial court's order dismissing Simmonds's suit as frivolous and remand this case for further proceedings. We otherwise affirm the trial court's dismissal order.

REX D. DAVIS
Justice

Before Chief Justice Gray,
     Justice Reyna, and
     Justice Davis
     (Chief Justice Gray concurs in part and dissents in part with a note)*
Affirmed in part, reversed and remanded in part
Opinion delivered and filed February 24, 2010
[CV06]

*(Chief Justice Gray concurs in part and dissents in part. A separate opinion will not issue. He provides, however, the following note. When any litigant buries what a majority of this Court has now finally determined is a legally and factually arguable claim amongst numerous unfounded claims, I do not believe the trial court errs in dismissing the entire suit as frivolous. It has taken the Court 23 pages of detailed analysis to wade through the plaintiff's claims and the Court has determined that almost all of the plaintiff's claims have no basis in law or fact. I do not believe that a trial court is obligated to attempt such an endeavor. And I do not believe that we are obligated to engage in such an endeavor as part of our review of the trial court's judgment in search of an arguable claim, particularly when the statute expressly provides that the trial court may dismiss a claim if its realistic chance of success is slight. There are numerous analogous situations in the law in which it is held that the litigant has waived their objection or claim. For example if a litigant makes numerous unfounded objections that serve only to obfuscate or hide a potentially valid objection, it is held that the litigant has waived his potentially proper objection. Likewise, if a

litigant offers for introduction into evidence both admissible and inadmissible evidence en-mass, and the trial court overrules an objection to the introduction of the evidence, it is the objecting litigant's burden to identify, separate, and object to only the inadmissible evidence or the objection is waived even if some part of the evidence was not admissible. As a further example, if an appellant makes no reference or only a general reference to the record for evidence supporting an argument the appellate court is not obligated to scour the appellate record for such evidence even if that evidence, if found in the record, would require the appellate court to reverse a summary judgment. I believe this is an analogous situation. The Court's opinion represents an enormous investment of the State's resources in identifying what is essentially one claim with only an arguable factual basis, and that claim is hidden by duplication via the use of archaic labels. I would not have engaged in searching for such an illusive creature. And I do not believe that even the allegations identified by the majority will support a claim. But anything further that I write on this, even the addition of citations for the legal propositions referred to herein, is just a further expenditure of State resources on what I believe is already a frivolous claim that the majority has determined must be remanded to the trial court. I would not. I would affirm the trial court's judgment in its entirety. I join no part of the opinion, in particular that part that refuses to address whether the Court can properly ignore the portion of the statute that expressly provides that a suit can be dismissed because its realistic chance of success is slight without that determination having first been made by the trial court, the proceeding dismissed by the trial court on that basis, and that dismissal having been properly challenged on the basis that it is a violation of the due process clause. The Court impliedly does this on behalf of Simmonds. I would not. Thus I concur in the Court's judgment only to the extent that the Court affirms the trial court's judgment of dismissal, but respectfully dissent to the reversal and remand of any part or portion of the trial court's judgment.)